

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## 13-11-00087-CV

SHAMOUN & NORMAN, LLP, ET AL.,                    Appellants,

v.

YARTO INTERNATIONAL GROUP, LP AND
YIG-GP, LLC,                                       Appellees.

## 13-11-00256-CV

SHAMOUN & NORMAN, LLP, ET AL.,                    Appellants,

v.

ROBERT YARTO, ET AL.,                             Appellees.

## 13-11-00281-CV

## IN RE SHAMOUN & NORMAN, LLP, ET AL.

## On Petition for Writ of Mandamus.

**On appeal from the 332nd District Court
of Hidalgo County, Texas**

# OPINION ON REHEARING

## Before Chief Justice Valdez and Justices Garza and Vela
## Memorandum Opinion on Rehearing by Justice Garza

We grant in part and deny in part the motion for rehearing filed by appellants/relators Shamoun & Norman, LLP, Gregory Shamoun and Brian Norman (collectively "Shamoun"), vacate and withdraw our previous memorandum opinion and judgment dated January 19, 2012, and issue the following in its place.

By two interlocutory appeals and a petition for writ of mandamus, Shamoun challenges (1) the trial court's order imposing an anti-suit injunction, and (2) its orders denying two motions to transfer venue. We will deny the petition for writ of mandamus, reverse the trial court's judgment granting the anti-suit injunction, affirm the trial court's denial of the motions to transfer venue, and remand for further proceedings.

## I. BACKGROUND

Shamoun, a law firm based in Dallas County, was sued by appellee/real party in interest Robert Yarto on April 28, 2010 in Hidalgo County. Yarto asserted claims of professional negligence, breach of fiduciary duty, and theft of trade secrets. Yarto's petition, which requested damages and injunctive relief, alleged that Shamoun represented Yarto on several prior occasions but is "currently representing parties adverse to [Yarto] on matters similar to those for which [it] had previously represented [Yarto]." Yarto further alleged that Shamoun "illegally obtained confidential financial documents and/or trade secrets belonging to [Yarto]." According to the petition,

2

Shamoun breached its fiduciary duty to Yarto by (1) "represent[ing] parties adverse to [Yarto]," (2) "disclos[ing] confidential communications" to those adverse parties during a 2010 mediation in Travis County, and (3) "us[ing] illegally obtained documents to [Yarto]'s detriment." The petition also named Rhoderick Williams and Steven Winkler as defendants.[1]

On April 29, 2010, Shamoun answered Yarto's suit and filed a motion to transfer venue. The answer contained a general denial of Yarto's allegations and asserted various affirmative defenses. The motion to transfer asserted that Dallas County or Collin County was a proper venue for the litigation, and Hidalgo County was improper, because: (1) the alleged tortious acts and omissions occurred in Dallas and/or Collin Counties; (2) Shamoun maintains its principal place of business in those counties; and (3) witnesses, documents, and evidence related to the case are located in those counties.

The next day, Yarto's suit was removed to bankruptcy court. The debtor in the bankruptcy proceedings was YITC-GP, LLC ("YITC-GP"), a corporation set up to serve as general partner of Yarto International Trading Group, L.P. ("YITC"). YITC and YITC-GP, as well as two other entities, appellees/real parties in interest Yarto International Group, L.P. ("YIG"), and YIG-GP, LLC ("YIG-GP"), were founded by Yarto but later came to be owned and operated by Williams and Winkler.[2] At the time the bankruptcy proceedings commenced, YIG, YITC, Williams and Winkler were all represented by Shamoun in various lawsuits involving Yarto and multiple third parties. All of those

---

[1] Williams and Winkler are two of the adverse parties that Yarto claims Shamoun is representing to his detriment. Williams and Winkler are not parties to the proceedings before this Court.

[2] For ease of reference, YIG and YIG-GP will be referred to collectively as "YIG," and YITC and YITC-GP will be referred to collectively as "YITC."

3

pending cases, along with Yarto's suit against Shamoun, were removed to bankruptcy court on April 30, 2010. *See* 28 U.S.C. § 1334(b) (stating that federal district courts have "original but not exclusive jurisdiction of all civil proceedings . . . arising in or related to cases under" the federal bankruptcy code); *id.* § 1452(a) (providing for removal to bankruptcy court of claims related to bankruptcy cases).

Eventually, the parties agreed to settle their outstanding claims in exchange for mutual releases. A global settlement agreement, drafted by Shamoun at the direction of the parties, was executed on December 9, 2010. As part of the agreement, YIG agreed to transfer certain assets to YITC; Williams and Winkler agreed to transfer ownership of YIG to Yarto; and YITC pledged to pay more than $1.5 million in settlement payments to various parties.[3] The agreement further provided that: (1) YITC would release Yarto from any and all claims related to the pending litigation; and (2) Yarto would release YITC, along with its "past and present agents, representatives, officers, directors and attorneys," including Winkler and Williams, from any and all claims related to the pending litigation, with one notable exception:

> 15. <u>Shamoun Litigation.</u> Nothing in this Agreement shall be construed as a release of Shamoun by Yarto. The Parties hereby acknowledge and agree that, with respect to any claim, lawsuit, complaint or proceeding (whether judicial or otherwise) brought by any of the Yarto Parties [i.e., Yarto and YIG] . . . against Shamoun and/or any of its partners or affiliates (in each case, a "Shamoun Claim"), (a) such Shamoun Claim shall be brought in an appropriate state court located in Travis County, Texas, and (b) none of the Yarto Parties . . . shall be permitted to bring a Shamoun Claim in any court not located in Travis County, Texas. The parties hereby acknowledge[] and agree that (y) Shamoun is and shall be considered a third-party beneficiary[4] with respect . . . to [this] Agreement,

---

[3] Specifically, the agreement called for YITC to make payments of $1,165,000 to JenRob Investments, L.P., $300,000 to Compass Bank, and $312,500 to David Girault. Each of the specified payees was involved in the pending litigation and each was a party and signatory to the settlement agreement.

[4] Shamoun was not a signatory to the settlement agreement, even though it was already a party

and (z) Shamoun shall have the right to directly enforce this provision . . . on Shamoun's own behalf.

The agreement stated that, upon execution of the settlement documents, Yarto's suit against Shamoun would be remanded from bankruptcy court to state district court.[5] The settlement agreement also contained the following paragraph:

27. SUBMISSION TO JURISDICTION. THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN AN APPROPRIATE STATE OR FEDERAL COURT IN TRAVIS COUNTY, TEXAS, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

On December 1, 2010, after the settlement agreement had been negotiated but prior to its execution, Shamoun sent a letter to Williams and Winkler addressing Shamoun's status theretofore as counsel of record for YIG. The letter stated:

Prior to the settlement, this firm provided services to the so-called YITC Parties which, at the beginning, included [YIG]. Pursuant to the Settlement Agreement, [YIG is] transferring certain assets to the YITC parties and ownership of [YIG] will be transferred solely to the so-called "Yarto Parties" side of the litigation. This letter is to confirm and clarify that, this firm provided services only to the YITC Parties. With respect to the Settlement Documents which provide that [YIG] will be transferred to the Yarto Parties, this firm has not represented [YIG]. [YIG] further acknowledge[s] that [it was] promptly made aware of this issue and [was] advised of [its] right to retain separate counsel to advise [it] regarding the YIG Settlement Documents and this letter.

[YIG] understand[s] that the YIG Settlement Documents were prepared according to instructions of the YITC Parties and the final instructions from the parties utilizing the YIG Settlement Documents and their attorneys at the time of closing of the YIG Settlement Documents. No representations have been made as to the legal effects or tax consequences of the YIG Settlement Documents. Additionally, [YIG] acknowledge[s] that [it] understand[s] that [Shamoun] has made no independent investigation,

to the underlying litigation at the time the agreement was reached.

[5] The agreement also helpfully provided that Winkler and Williams, owners and operators of YITC and YITC-GP, must change the names of those entities so that they do not include the word "Yarto."

5

representation or assurance whatsoever regarding the compliance of the contemplated transaction as evidenced by the YIG Settlement Documents with tax, securities, or other law of the United States of America having jurisdiction over this transaction.

[YIG] understand[s] that [Shamoun] is not employed for representation generally or for any purpose in connection with the YIG Settlement Documents other than that stated above. [YIG] acknowledge[s] that [it has] read, understand[s], and hereby approve[s] of the YIG Settlement Documents.

The letter was countersigned by Williams and Winkler as representatives of YIG.

After the settlement agreement was executed, the bankruptcy court remanded Yarto's suit to state district court in Hidalgo County. Yarto and Shamoun were the only parties remaining in the pending litigation. On December 29, 2010, Yarto filed an "Agreed Motion to Transfer Venue" in which he conceded that he "agreed in the settlement agreement to prosecute his remaining claims against [Shamoun] solely in Travis County, Texas." The motion was signed by counsel for both Yarto and Shamoun.

However, on January 19, 2011, before the trial court heard or ruled upon the agreed motion to transfer, YIG intervened in the case. Its petition in intervention, sworn to by Yarto as an authorized representative of YIG, asserted that Shamoun committed professional negligence and breached its fiduciary duty by, among other things: (1) representing parties adverse to YIG; (2) disclosing confidential communications involving YIG; and (3) "conspir[ing] with others to divest [YIG] of valuable and lucrative assets, leaving [YIG] devoid of all assets." YIG additionally alleged that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]." The petition stated that "[v]enue is proper as to [YIG] because all or a substantial part of the

6

acts and/or omissions complained of occurred in Hidalgo County . . . and [YIG's] claims arise from the same set of operative facts as [Yarto]'s claims." YIG's petition in intervention sought damages as well as injunctive relief, claiming that Shamoun "ha[s] already demonstrated the propensity to avoid this proper venue [Hidalgo County district court] at any cost, including the filing of frivolous pleadings and proceedings." YIG requested an anti-suit injunction, noting that Shamoun had already brought suit against it in Dallas County and arguing that "there is an imminent threat of irreparable harm that [Shamoun] will, once again, attempt to avoid this proper venue by filing additional frivolous pleadings or proceedings in one or more different venues."

After YIG filed its petition in intervention, Shamoun filed an amended motion to transfer arguing that the action should be transferred either to Travis County or Dallas County. The amended motion contended that Travis was a proper venue because Yarto "entered into a valid, binding contractual agreement to place venue in Travis County" and "the alleged acts of which [Yarto] complains occurred, if at all, in Travis County. . . ."

The trial court granted YIG's request for a temporary restraining order and, after a hearing on January 27, 2011, the trial court granted the requested temporary anti-suit injunction. Both orders enjoined Shamoun from "filing, initiating, serving any process, [or] continuing any litigation against [YIG and YIG-GP or their] employees, agents and representatives in any other court or forum unless leave of this Court is first obtained." Shamoun appealed the temporary injunction order.[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2008) (permitting appeal from interlocutory order granting

---

[6] Appellate cause number 13-11-00087-CV.

7

temporary injunction).

At the January 27, 2011 hearing, the trial court was advised that Yarto's "Agreed Motion to Transfer Venue" and Shamoun's separately-filed motion to transfer were still pending. A hearing was held on the venue issue on March 10, 2011. On March 31, 2011, the trial court rendered an order denying Shamoun's motion to transfer venue, and it later denied the "Agreed Motion to Transfer Venue" filed by Yarto.[7] Shamoun appealed the trial court's judgment,[8] *see id.* § 15.003(b)(1) (West Supp. 2010) (permitting appeal of interlocutory order determining that a plaintiff independently established proper venue), and filed a petition for writ of mandamus.[9]

## II. DISCUSSION

### A. Anti-Suit Injunction

In appellate cause number 13-11-00087-CV, Shamoun argues that the trial court erred by granting YIG's request for a temporary anti-suit injunction.

#### 1. Standard of Review

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *State v. Walker*, 679 S.W.2d 484, 485 (Tex.

---

[7] On original submission, we noted that the trial court had not ruled on the "Agreed Motion to Transfer" and that it in fact had "indicated unequivocally that it does not intend to rule on the motion." We therefore directed the trial court to rule on the motion. The trial court did so on February 28, 2012, and a supplemental clerk's record containing the trial court's written order denying the motion was filed with this Court on March 6, 2012.

[8] Appellate cause number 13-11-00256-CV.

[9] Appellate cause number 13-11-00281-CV. Shamoun filed a second petition for writ of mandamus on March 15, 2012, appellate cause number 13-12-00179-CV, contending that the trial court erred in apparently concluding that Yarto withdrew his consent to transfer. However, we will conclude that the trial court was not compelled to transfer venue *even if* Yarto failed to withdraw his consent to transfer. *See infra* section II.B.3.i and n.20. Accordingly, we will, in a separate opinion, deny Shamoun's petition in appellate cause number 13-12-00179-CV.

8

1984)).  We will reverse an order granting injunctive relief only if the trial court abused that discretion.  *Id.* (citing *Walling*, 863 S.W.2d at 58; *Walker*, 679 S.W.2d at 485).

### 2. Applicable Law

In general, the purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits.  *Id.*  An anti-suit injunction, in particular, will issue "only in very special circumstances."  *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (citing *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)).  An applicant for an anti-suit injunction must show that "a clear equity demands" such relief in order to:  (1) address a threat to the court's jurisdiction; (2) prevent the evasion of important public policy; (3) prevent a multiplicity of suits; or (4) protect a party from vexatious or harassing litigation.  *Id.* (citing *Christensen*, 719 S.W.2d at 163; *Gannon*, 706 S.W.2d at 307).  We have stated that the majority rule in Texas is that a party seeking an anti-suit injunction must satisfy the traditional prerequisites to injunctive relief as well as the more specific requirements applicable only to anti-suit injunctions.  *See Yarto v. Gilliland*, 287 S.W.3d 83, 88 n.8 (Tex. App.—Corpus Christi 2009, no pet.) (listing cases); *see also Counsel Fin. Servs., L.L.C. v. Leibowitz*, No. 13-10-00200-CV, 2011 Tex. App. LEXIS 5079, at *32–33 (Tex. App.—Corpus Christi July 1, 2011, no pet.) (mem. op.); *Freddie Records, Inc. v. Ayala*, No. 13-07-00363-CV, 2009 Tex. App. LEXIS 7681, at *12 (Tex. App.—Corpus Christi Sept. 30, 2009, no pet.) (mem. op.).[10]

---

[10] Though a majority of courts have held that an anti-suit injunction applicant must meet the traditional requirements for injunctive relief, there remains conflict and confusion over this issue.  *See, e.g., Bay Fin. Sav. Bank v. Brown*, 142 S.W.3d 586, 591 (Tex. App.—Texarkana 2004, no pet.) (holding that anti-suit injunctions must also comply with requirements provided in rules of civil procedure); *Marroquin v. D & N Funding, Inc.*, 943 S.W.2d 112, 114 (Tex. App.—Corpus Christi 1997, no pet.) (assessing whether a trial court erred in denying request for an anti-suit injunction by assessing whether party had pleaded and proven a probable injury if relief was denied and a probable right to recovery);

Those traditional prerequisites are: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204 (citing *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)).

In the context of a request for temporary injunctive relief, a probable right to recovery and probable injury must be established by competent evidence adduced at a hearing. *Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968); *see Armendariz v. Mora*, 526 S.W.2d 542, 543 (Tex. 1975); *see also Compass Bank v. Barrera*, No. 13-10-00529-CV, 2011 Tex. App. LEXIS 1558, at *7–8 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (mem. op.); *McDaniel v. Connelly*, No. 13-08-230-CV, 2008 Tex. App. LEXIS 5119, at *2–3 (Tex. App.—Corpus Christi July 3, 2008, pet. denied) (mem. op.).[11] However, a sworn petition does not constitute

---

*Total Minatome Corp. v. Santa Fe Materials, Inc.*, 851 S.W.2d 336, 339 (Tex. App.—Dallas 1993, no writ) (holding that "clear equity" justifying an anti-suit injunction requires showing of irreparable injury, inadequate remedy at law, and probable right of recovery); *but see, e.g., In re Henry*, 274 S.W.3d 185, 193–94 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (op. on reh'g) (rejecting contention that a party seeking an anti-suit injunction is also required to establish a probable right of recovery in the underlying lawsuit, irreparable harm, and that no adequate remedy at law exists); *Admiral Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 848 S.W.2d 251, 258 (Tex. App.—Fort Worth 1993, writ denied) (rejecting contention that a person seeking an anti-suit injunction must establish a probable right to recovery on the merits). The Texas Supreme Court has not explicitly ruled on this issue; however, in 2005, the Court addressed only the requirements specific to anti-suit injunctions in affirming the issuance of such an injunction. *See Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005).

We need not decide whether the traditional injunction requirements apply to anti-suit injunctions because, even assuming they do not apply, YIG has still failed to meet its burden because it did not produce any evidence on the requirements specific to anti-suit injunctions.

[11] More than half a century ago, the Texas Supreme Court explained why competent evidence is required to support a request for temporary injunction:

> An applicant for a temporary injunction seeks extraordinary equitable relief. He seeks to immobilize the defendant from a course of conduct which it may well be his legal right to pursue. Crowded dockets, infrequent jury trial weeks, or trial tactics can often delay a trial of a case on its merits for many months. The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery. If not, no purpose is served by the provisions of Rule 680, [Texas Rules of Civil Procedure], limiting the time for which a restraining order granted without a hearing can operate and requiring a hearing before a

evidence. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *Rogers v. Howell*, 592 S.W.2d 402, 403 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.); *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at \*9. Further, in the absence of an agreement between the parties, the proof required to support a judgment issuing a temporary injunction may not be made by affidavit. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *but see Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) (holding that "a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon") (emphasis in original). And, "remarks of counsel during the course of a hearing are not competent evidence unless the attorney is actually testifying." *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.); *see Collier Servs. Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1991, orig. proceeding); *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at \*10.

### 3. Analysis

Two hearings were held on YIG's request for injunctive relief. The first hearing took place on January 19, 2011, the same day that YIG filed its petition in intervention and request for injunctive relief. Counsel for YIG appeared in person and Gregory Shamoun appeared personally by telephone. No witnesses were called, no evidence was admitted, and the attorneys were not sworn and did not testify. Shamoun explained to the trial court that he had not yet been served with YIG's petition or request for injunctive relief and so could not agree to a temporary restraining order enjoining

---

temporary injunction can issue. If he cannot or does not discharge his burden he is not entitled to extraordinary relief. Writs of injunction should not issue on mere surmise.

*Camp v. Shannon*, 162 Tex. 515, 519, 348 S.W.2d 517, 519 (1961).

11

Shamoun from filing suit against YIG.[12]  The trial court granted the temporary restraining order and scheduled a temporary injunction hearing for the following week.  *See* TEX. R. CIV. P. 680 ("Every restraining order shall include an order setting a certain date for hearing on the temporary or permanent injunction sought.").

The temporary injunction hearing took place on January 27, 2011.  Counsel for Yarto, YIG, and Shamoun all appeared in person and offered arguments.  Again, no witnesses were called and no sworn testimony was given by the attorneys.  During the course of the hearing, six documents were accepted as exhibits by the trial court.  YIG offered four documents:  (1) Yarto's motion for remand filed in bankruptcy court; (2) a prior temporary anti-suit restraining order issued in a separate case on March 31, 2010, which enjoined YIG, YITC, Winkler, Williams, and others from filing suit against Yarto; (3) an order extending that temporary restraining order; and (4) a transcript of the January 19, 2011 telephonic hearing.  Counsel for Shamoun introduced:  (1) Shamoun's December 1, 2010 letter to Williams, Winkler, and others addressing Shamoun's status up until that point as counsel of record for YIG; and (2) a "Partial Release Agreement" executed by Yarto, dated December 6, 2010, in which Yarto "and his attorneys, heirs and assigns" agreed to release Shamoun from any and all claims related to the drafting of settlement documents, with the exception of Yarto's then-existing claim.  Other than the "Partial Release Agreement," which was sworn to by Yarto, none of the six documents that were accepted by the trial court as exhibits contained sworn

---

[12] At the January 27, 2011 temporary injunction hearing and on appeal, YIG points to Shamoun's reluctance to agree to a temporary restraining order as evidence that Shamoun intended to file suit against YIG in another venue, and therefore that YIG would suffer irreparable harm if the injunction did not issue.  However, the statements made by Shamoun's counsel at the hearing are not evidence because Shamoun was not sworn.  *See Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.).

12

verifications. After the hearing, the trial court granted YIG's request for a temporary injunction barring Shamoun from filing suit against YIG in any other venue.

On appeal, Shamoun argues that the trial court erred by granting the injunction because YIG "failed to meet any evidentiary burden placed on them" by rule or case law. [13] We agree. As noted, an applicant for injunction must establish its probable right to recovery and a probable injury by competent evidence adduced at a hearing. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686. Here, no witnesses presented sworn testimony at either the January 11 or January 27 hearings. Moreover, the documents which were introduced by YIG as exhibits at the January 27 hearing were not authenticated by testimony, nor were they self-authenticating by virtue of being sworn to or verified.[14] The only "evidence" upon which the trial court based its ruling was YIG's sworn petition, the argument of counsel, and the six documents accepted as exhibits at the hearing. This was, in effect, no evidence. *See id.*; *Bay Fin. Sav. Bank, FSB*, 142 S.W.3d at 590; *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at *9– 10.[15] Accordingly, the trial court abused its discretion by granting the anti-suit

---

[13] At oral argument, YIG asserted that Shamoun waived this issue by failing to present it to the trial court. *See* TEX. R. APP. P. 33.1. However, Shamoun's complaint is essentially that there was legally insufficient evidence to support the trial court's order granting the injunction; and, "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." TEX. R. APP. P. 33.1(d). We therefore reject YIG's contention that the issue was waived.

[14] The general rule established in *Millwrights* is that, in the absence of an agreement between the parties, the proof required to support a temporary injunction may not be made by affidavit. *Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968). We note, however, that the Dallas Court of Appeals held in 2005 that "a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon." *Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) (emphasis in original). We do not herein approve or disapprove of *Pierce*, but instead merely note that, in any event, YIG did not introduce any affidavits or other verified documents as evidence at either injunction hearing.

[15] YIG notes that, in a 2005 memorandum opinion, this Court found evidence supporting a temporary injunction to be sufficient, even in the absence of live testimony, where court documents had been judicially noticed by the trial court. *See Tex. Mut. Ins. Co. v. Howell*, No. 13-05-026-CV, 2005 Tex.

injunction.  *See Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *see also Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex.*, 975 S.W.2d 546, 560 (Tex. 1998) ("[A] trial court has no discretion to grant injunctive relief . . . without supporting evidence.").  We sustain Shamoun's issue in appellate cause number 13-11-00087-CV.

## B.     Interlocutory Appeal of Venue Determination

In appellate cause number 13-11-00256-CV, Shamoun argues that the trial court erred by denying its motion to transfer venue because Yarto and YIG did not "independently establish venue as required under [Texas Civil Practice and Remedies Code section] 15.003(a)."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).

### 1.  Jurisdiction

Citing the Texas Supreme Court's 2000 opinion in *American Home Products Corp. v. Clark*, Yarto contends that we lack jurisdiction to consider Shamoun's appeal regarding venue because the statute upon which the appeal is based, section 15.003, applies only to orders "allowing or denying intervention or joinder."  *See* 38 S.W.3d 92, 96 (Tex. 2000).  However, the Legislature amended section 15.003 in 2003.  *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 3.03, 2003 TEX. SESS. LAW SERV. 847, 853. Section 15.003(a) now applies to any "suit in which there is more than one plaintiff," whether the plaintiffs are included "by joinder, by intervention, because the lawsuit was

---

App. LEXIS 6950, at *22–23 (Tex. App.—Corpus Christi Aug. 25, 2005, pet. granted, judgm't vacated w.r.m.) (mem. op.).  Here, however, the record reflects that the trial court never formally took judicial notice of the various documents produced at the January 27, 2011 hearing.  Moreover, while this Court may take judicial notice of court documents on appeal, *see Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994), no such request was made by any party in this case. Accordingly, the documents cannot by themselves be considered competent evidence supporting the temporary injunction order.

begun by more than one plaintiff, or otherwise." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a). The statute states that, in such suits,

> each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:
>
> (1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;
>
> (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;
>
> (3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and
>
> (4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

*Id.* The amended statute applies to any action filed on or after September 1, 2003. Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 TEX. SESS. LAW SERV. 847, 899.

Subsection (b) of section 15.003 allows an interlocutory appeal of a trial court's determination that (1) a plaintiff did or did not independently establish proper venue, or (2) a plaintiff that did not independently establish proper venue did not establish the four requirements specified in subsection (a). *Id.* § 15.003(b).[16] Other appellate courts have concluded, and we agree, that under the revised statute, interlocutory appeals are

---

[16] Prior to this amendment, the statute read as follows:

> Any person seeking intervention or joinder, who is unable to independently establish proper venue, or a party opposing intervention or joinder of such a person may contest the decision of the trial court allowing or denying intervention or joinder by taking an interlocutory appeal to the court of appeals district in which the trial court is located under the procedures established for interlocutory appeals. . . .

Act of May 18, 2005, 74th Leg., R.S., ch. 138, § 1, 1995 TEX. SESS. LAW SERV. 978, 979 (amended 2003).

15

available for venue determinations in any case involving multiple plaintiffs. *See Crown Cent. LLC v. Anderson*, 239 S.W.3d 385, 388 (Tex. App.—Beaumont 2007, pet. denied) (permitting interlocutory appeal under section 15.003 of order denying defendants' motion to transfer venue in case involving multiple plaintiffs); *see also Thomas v. Hoelke*, No. 04-09-00771-CV, 2010 Tex. App. LEXIS 4501, at *4–5 (Tex. App.—San Antonio June 16, 2010, no pet.) (mem. op.) (same); *Siemens Corp. v. Bartek*, No. 03-04-00613-CV, 2006 Tex. App. LEXIS 3533, at *11 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.) (same); *Sw. Bell Tel. Co. v. Superior Payphones, Ltd.*, No. 13-05-00661-CV, 2006 Tex. App. LEXIS 1502, at *7 (Tex. App.—Corpus Christi Feb. 23, 2006, pet. dism'd by agr.) (mem. op.)[17]; *but see Harding Bars, LLC v. McCaskill*, No. 04-11-00629-CV, 2012 Tex. App. LEXIS 799, at *4–5 (Tex. App.—San Antonio Feb. 1, 2012, no pet. h.); *Basic Energy Svcs. GP, LLC v. Gomez*, No. 04-10-00128-CV, 2010 Tex. App. LEXIS 5455, at *7–8 (Tex. App.—San Antonio July 14, 2010, pet. denied)

---

[17] In *Southwestern Bell Telephone Co. v. Superior Payphones, Ltd.*, this Court considered whether we had jurisdiction to review an interlocutory order denying a motion to transfer. No. 13-05-00661-CV, 2006 Tex. App. LEXIS 1502, at *5–7 (Tex. App.—Corpus Christi Feb. 23, 2006, pet. dism'd by agr.) (mem. op.). The trial court's order did not specify whether the motion was denied "because appellees independently established proper venue or because they met the joinder requirements of section 15.003(a)." *Id.* at *5. The appellees argued that "if the former is the basis for the court's ruling, then we do not have jurisdiction over this appeal" but "[i]f the latter rationale is relied upon, . . . then we may have jurisdiction over the appeal." *Id.* at *5–6. In rejecting appellees' argument, we noted that "[s]ection 15.003(a) now applies to any 'suit in which there is more than one plaintiff,' whether the plaintiffs are included 'by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise.'" *Id.* at *6 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a)). We therefore concluded that "interlocutory appeals are available in all venue determinations involving multiple plaintiffs where joinder is challenged." *Id.* at *7 (emphasis added).

Although we stated in *Southwestern Bell* that interlocutory appeals of venue rulings are available in cases "where joinder is challenged," we did not intend to imply by those words that such appeals are *only* available in that instance. Instead, as we recognized, the 2003 statute permits interlocutory appeals of venue rulings "in *any* 'suit in which there is more than one plaintiff,'" *id.* at *6 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a)) (emphasis added), not merely suits in which a plaintiff has been included by joinder. It would be erroneous, then, to infer from our conclusory sentence in *Southwestern Bell* that, under the 2003 statute, interlocutory appeals of venue rulings are *only* available "where joinder is challenged."

(mem. op.).[18]   We further believe that the specific language in section 15.003 authorizing an interlocutory appeal in this particular type of case trumps the more generic language in section 15.064 stating broadly that "[n]o interlocutory appeal shall lie from the determination [of venue questions]."   TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) (West 2002); *see City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008)

---

[18] In *Gomez*, as in *Southwestern Bell*, the trial court denied a defendant's motion to transfer but did not specify whether the denial was "because [each of the plaintiffs] independently established proper venue pursuant to section 15.002 or because [the plaintiffs] met the joinder requirements pursuant to section 15.003." No. 04-10-00128-CV, 2010 Tex. App. LEXIS 5455, at *7 (Tex. App.—San Antonio July 14, 2010, pet. denied) (mem. op.).  On appeal, the San Antonio court reversed and remanded to the trial court for a revised order specifying the basis for the ruling, finding that "if section 15.002 is the basis for the trial court's ruling denying the motion to transfer venue, then we do not have jurisdiction over this appeal. . . . On the contrary, if section 15.003 is the basis for the trial court's ruling . . . , then we have jurisdiction to hear the interlocutory appeal."  *Id.* at *7–8.  In support of this conclusion, the court cited *Clark*, 3 S.W.3d 57, 58 (Tex. App.—Waco 1999, no pet.), and dubiously suggested that section 15.003(c) permits an interlocutory appeal only where a "plaintiff who was included by joinder or intervention cannot independently establish proper venue."  *Gomez*, 2010 Tex. App. LEXIS 5455, at *7–8.

In *McCaskill*, the San Antonio court determined that it did not have jurisdiction under section 15.003 to consider an interlocutory appeal of an order denying a motion to transfer because "[i]t is clear from the motions to transfer venue that the appellants' complaints focused primarily on the choice of Maverick County as the county of venue and not on whether [plaintiffs] the Viescas could intervene or join the lawsuit as plaintiffs."  *Harding Bars, LLC v. McCaskill*, No. 04-11-00629-CV, 2012 Tex. App. LEXIS 799, at *7 (Tex. App.—San Antonio Feb. 1, 2012, no pet.).  The court cited *Clark* and *Electronic Data Systems Corp. v. Pioneer Electronics (USA) Inc.*, 68 S.W.3d 254, 257 (Tex. App.—Fort Worth 2002, no pet.), for the proposition that section 15.003's "limited right of appeal applies only to a trial court's determination that a plaintiff may or may not intervene or join in the suit."  *McCaskill*, 2012 Tex. App. LEXIS 799, at *4.  The court also cited *Surgitek v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999), for the proposition that interlocutory appellate jurisdiction lies only when the challenged order "necessarily rested on the trial court's determination of the propriety of joinder under section 15.003(a)."  *McCaskill*, 2012 Tex. App. LEXIS 799, at *7–8.

We disagree with *McCaskill* and *Gomez* because those cases rely on obsolete authority.  *Clark*, *Electronic Data Systems Corp.*, and *Surgitek* each construed the pre-2003 version of the statute. Moreover, the current version of section 15.003(c) does not limit appeals in the manner suggested by *Gomez*.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(c); *Gomez*, 2010 Tex. App. LEXIS 5455, at *7–8.  In particular, as noted, section 15.003(b) currently states that "[a]n interlocutory appeal may be taken of a trial court's determination under Subsection (a) that (1) a plaintiff did or did not independently establish proper venue; or (2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)-(4) [i.e., the 'joinder requirements']."  *Id.* § 15.003(b). Subsection (a) applies to any suit involving more than one plaintiff.  *Id.* § 15.003(a).  And, the only way for a plaintiff to "independently establish proper venue" in such cases is to make reference to the general, permissive, or mandatory venue statutes.  *See id.* § 15.001(b) (West 2002).  Accordingly, the plain language of the statute indicates that the Legislature did not intend to limit interlocutory appeals to those cases where a plaintiff meets or fails to meet "the joinder requirements pursuant to section 15.003." *Gomez*, 2010 Tex. App. LEXIS 5455, at *7.  Instead, the 2003 amendment expanded interlocutory appellate jurisdiction under section 15.003(b) to all venue rulings in cases involving multiple plaintiffs.

17

("In determining legislative intent, we are thus guided by the principle that a specific statute will ordinarily prevail over a general statute when the two cannot be reconciled."). We conclude that we have jurisdiction over Shamoun's appeal.

### 2. Applicable Law and Standard of Review

In general, plaintiffs are allowed to choose venue first, and the plaintiff's choice cannot be disturbed as long as suit is initially filed in a county of proper venue. *Henry v. McMichael*, 274 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Crown Cent. LLC*, 239 S.W.3d at 388. A trial court must consider all venue facts pled by the plaintiff as true unless they are specifically denied by an adverse party. TEX. R. CIV. P. 87(3)(a). Once an adverse party specifically denies venue facts, the plaintiff must then respond with prima facie proof of those venue facts. *Id.* "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id.* This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993); *Henry*, 274 S.W.3d at 190.

"Proper venue" means: (1) the mandatory venue, as provided by subchapter B of chapter 15 of the civil practice and remedies code or any other statute prescribing mandatory venue; or (2) if there is no mandatory venue, the venue provided under the general venue statute or the permissive venue provisions of subchapter C of chapter 15.[19] The general venue statute states that all lawsuits shall be brought:

(1)   in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

---

[19] Subchapter C of chapter 15 includes, by reference, all permissive venue provisions contained in any statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.038 (West 2002) ("An action governed by any other statute prescribing permissive venue may be brought in the county allowed by that statute.").

> (2)     in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;
>
> (3)     in the county of the defendant's principal office in this state, if the defendant is not a natural person;  or
>
> (4)     if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a).  Venue may be proper in more than one county under the general, mandatory or permissive venue rules.  *See GeoChem Tech Corp. v. Verseckes*, 962 S.W.2d 541, 544 (Tex. 1998).

Under section 15.003(c)(1), we determine whether the trial court's order is proper "based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard."  *Id.* § 15.003(c)(1).  The trial court's determination that venue is proper in a particular county will be upheld on appeal if there is any probative evidence supporting venue in the county of suit, even if the evidence preponderates to the contrary.  *Henry*, 274 S.W.3d at 190 (citing *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.)).  However, conclusive evidence to the contrary can "destroy the probative evidence."  *Chiriboga*, 96 S.W.3d at 678.

### 3. Analysis

Shamoun contends that neither Yarto nor YIG independently established that Hidalgo County was a proper venue for their suits.  Because each plaintiff must independently establish venue, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a), we will address Yarto and YIG separately.

#### i. Yarto

19

In his first amended original petition, Yarto asserts that Hidalgo County is a proper venue for his suit under the Texas Theft Liability Act, which states in part that a suit for theft "may be brought in the county where the theft occurred or in the county where the defendant resides." TEX. CIV. PRAC. & REM. CODE ANN. § 134.004 (West 2011); *see id.* § 15.038 (West 2002). Shamoun responds by asserting that: (1) Yarto waived his ability to contest venue by filing the agreed motion to transfer to Travis County on December 29, 2010; and (2) even if he did not waive his ability to contest venue, Yarto "failed to provide . . . any venue facts establishing or suggesting that [Shamoun] committed some act or omission in Hidalgo County."

We first address the waiver issue. Shamoun argues that, once Yarto filed the agreed motion to transfer, the trial court had a ministerial duty to grant that motion pursuant to section 15.063 of the civil practice and remedies code, which provides that a trial court "shall transfer an action to another county of proper venue" if "written consent of the parties to transfer to any other county is filed at any time." *Id.* at § 15.063(3). Shamoun further argues that the agreed motion to transfer constituted a Rule 11 agreement establishing Travis County as a proper venue, and that the trial court had a duty to enforce that agreement. *See* TEX. R. CIV. P. 11. In support of this position, Shamoun directs us to the 1995 case of *Farris v. Ray*, in which the Texas Supreme Court held that "an enforceable Rule 11 agreement consenting to transfer of venue amounts to an express waiver of the venue issue." 895 S.W.2d 351, 352 (Tex. 1995) (per curiam).

Because it was in writing, signed by counsel and filed with the trial court, the agreed motion to transfer did indeed serve as a Rule 11 agreement acknowledging that Yarto and Shamoun consented to transfer the case to Travis County. *See* TEX. R. CIV.

20

P. 11.[20]   However, as Yarto correctly notes, even when parties to a suit enter into an unrevoked agreement regarding transfer of venue, the trial court is not bound to transfer the cause unless it is established that the transferee court is a "proper venue."  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.063 (providing that a trial court "shall transfer an action to another county of *proper venue*" if, among other things, written consent is filed at any time) (emphasis added); *Fleming v. Ahumada*, 193 S.W.3d 704, 713 (Tex. App.—Corpus Christi 2006, no pet.) (finding that, even if the parties had agreed to transfer venue to Bexar County, the trial court could not grant the requested transfer because Bexar County was "not a county of proper venue under any mandatory or permissive venue provision").  Here, the agreed motion to transfer did not state that the parties agreed that Travis County was a *proper* venue; it merely stated that the parties agreed to transfer the case there.[21]   So the agreed motion to transfer did not, by itself, compel the trial court to transfer the case to Travis County.  Instead, transfer was required only if proof was presented establishing proper venue in that county.

We find no such proof in the record.  In an affidavit attached to Yarto's response to Shamoun's motion to transfer, Yarto alleged in part that, "[d]uring the mediation of the *David E. Girault, et al. v. Rhoderick Tyrone Williams, et al.* case, Shamoun . . . presented certain confidential financial documents . . . in an attempt to

---

[20] We note that a party has the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment.  *ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983)); *see Padilla v. La France*, 907 S.W.2d 454, 460 (Tex. 1995); *see also Riggins v. Hill*, No. 14-09-00495-CV, 2011 Tex. App. LEXIS 8760, at *21 (Tex. App.—Houston [14th Dist.] Nov. 3, 2011, no pet. h.).  The trial court's February 28, 2012 order denying the agreed motion to transfer stated that "both [YIG] and [Yarto] have expressed their opposition to any transfer."  However, our review of the record reveals that Yarto never filed any paper with the trial court indicating the withdrawal or revocation of his consent to transfer to Travis County; nor did Yarto's counsel state at the March 10, 2011 venue hearing that Yarto withdrew or revoked his prior consent to suit in Travis County.

[21] Shamoun's original motion to transfer, which was filed on April 29, 2010 in response to Yarto's petition, asserted only that Dallas County and Collin County were proper venues for Yarto's suit.

extort concessions from me with this confidential information." Yarto also made this allegation in an affidavit attached to YIG's response to Shamoun's petition. In that subsequent affidavit, Yarto makes clear that the *Girault* mediation took place in Travis County. However, this lone, isolated allegation does not constitute a "substantial part" of the events giving rise to his claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a). The bulk of Yarto's claims, as set forth in his live petition, involve Shamoun's representation of parties adverse to Yarto and Shamoun's alleged conspiracy with Winkler and Williams to divest Yarto of his interest in YITC. Even the specific allegation referred to above, regarding the presentation of confidential documents at a Travis County mediation, does not form the primary factual basis for any single claim but rather is ancillary to Yarto's theft cause of action. Other than this insubstantial assertion by Yarto, no party provided any evidence that "all or a substantial part of the events or omissions giving rise to the claim" occurred in Travis County. In fact, Yarto's live petition did not allege that *any* part of the events giving rise to his claims occurred in that county. We therefore conclude the trial court was not compelled to grant Yarto and Shamoun's agreed motion to transfer on this basis.

We next address Shamoun's contention that Yarto "failed to provide . . . any venue facts establishing or suggesting that [Shamoun] committed some act or omission in Hidalgo County." Yarto's live petition alleged that his former employee Veronica Flores, "acting as an agent" of Shamoun, stole certain confidential financial documents (which Yarto calls "the trade secret documents") that were contained on Yarto's computer servers situated in Hidalgo County. Shamoun specifically denied this allegation in its answer and in its motion to transfer, thereby placing the burden on Yarto

22

to produce prima facie proof of these alleged venue facts. *See* TEX. R. CIV. P. 87(3)(a).

Yarto did so by submitting an affidavit stating, in relevant part, as follows:

> I maintain a computer server in Hidalgo County for Jenrob Investments, LP ("Jenrob"), a business in which I am a partner, and the managing partner. The trade secret documents were stored on the Jenrob server in Hidalgo County. The documents were taken from the Jenrob Server located in Hidalgo County. Veronica Flores, who was a resident of Hidalgo County at the time and former employee of Jenrob, had the access codes/passwords to obtain access to the Jenrob computer system. At all times in committing this theft, Veronica Flores was apparently acting as an agent of Shamoun & Norman. The stolen data was located in Hidalgo County, and was stolen from Hidalgo County. Additionally, Shamoun & Norman conspired with others, including Veronica Flores, to steal this data from JenRo[b]. In stealing this data from JenRob, Veronica Flores aided and abetted Shamoun & Norman in the breach of its fiduciary duty to me. The documents were not stolen from me in Travis County, as neither I nor my counsel brought said documents, nor had said documents in their possession, when we went to Travis County for mediation.

Shamoun provided an affidavit by Flores which denied these allegations. Specifically, Flores stated in her affidavit that she "never took any documents from any JenRob server when [she] left JenRob," she "never took or stole any of JenRob's documents or other information," she "never provided any of JenRob's documents to Rhod Williams or Steve Winkler," and she "never acted as the agent of [Shamoun]." Brian Norman also provided an affidavit in which he stated:

> Neither I nor my firm have ever had access to a computer belonging to [YIG] or Yarto in Hidalgo County. The documents to which Yarto refers were in the possession of Rhod[e]rick Williams and he obtained them from [YITC]'s computer in Collin County. Williams brought the documents at issue to mediation and none of Shamoun & Norman, LLP or any of its attorneys had anything to do with the presentation of such documents to the mediator.

Norman additionally averred that "Veronica Flores is not and has never been an agent or employee of [Shamoun]" and that "no data was stolen and certainly not stolen from any computer in Hidalgo County."

23

Shamoun argues that the allegations made by Yarto in his affidavit do not constitute prima facie proof of venue facts because they are mere conjecture. We disagree. Yarto swore in the affidavit that the facts stated therein "are based upon my own personal knowledge, and they are true." Moreover, even though Flores and Norman categorically denied Yarto's allegations, prima facie proof of venue facts by affidavit "is not subject to rebuttal, cross-examination, impeachment, or even disproof." *Ruiz*, 868 S.W.2d at 757. And, though probative venue evidence is susceptible to being "destroyed" by conclusive evidence to the contrary, *see Chiriboga*, 96 S.W.3d at 678, no such countervailing evidence was adduced by Shamoun here. The denials sworn to by Flores and Norman contradict Yarto's account but they do not conclusively disprove it. The trial court was therefore required to accept the venue facts alleged in Yarto's petition and supported by affidavit. *Ruiz*, 868 S.W.2d at 757; *Henry*, 274 S.W.3d at 190. Those facts include Yarto's accusation that Flores committed theft of property situated in Hidalgo County while acting as an agent of Shamoun. Accordingly, venue for Yarto's suit against Shamoun is proper in that county under the Texas Theft Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.004; *see also id.* § 15.038.

Shamoun's issue in appellate cause number 13-11-00256-CV is overruled as it relates to Yarto.

### ii. YIG

Unlike Yarto, YIG did not join in the agreed motion to transfer to Travis County, and there is no suggestion that YIG ever consented in any way to transfer. The only question, therefore, is whether YIG established that Hidalgo County was a proper venue for its suit under the applicable rules. In its appeal, Shamoun argues only that YIG failed to present prima facie proof establishing its alleged venue facts; it does not

24

contend on appeal that the application of any mandatory venue provision renders Hidalgo County an improper venue.[22]  Therefore, in our consideration of this issue, we will determine only whether YIG met its burden to establish venue under the general or permissive venue statutes.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.002(a)(1)–(4), 15.031–.039.

YIG made various factual allegations in its petition in intervention.  Shamoun filed a response on February 22, 2011 that generally denied all of YIG's allegations. However, "global" or "general" denials of venue allegations do not suffice as "specific" denials under the rules of civil procedure.  *Rodriguez v. Printone Color Corp.*, 982 S.W.2d 69, 71 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("[S]tatements such as 'Defendant specifically denies those venue facts pleaded in Plaintiff's Petition' do not constitute a 'specific denial' as required by [Texas Rule of Civil Procedure] 87.") (quoting *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 833 S.W.2d 736, 740 (Tex. App.—Houston [1st Dist.] 1992, writ denied)); *see* TEX. R. CIV. P. 87(3)(a); *see also In re Socorro Indep. Sch. Dist.*, No. 13-09-00500-CV, 2010 Tex. App. LEXIS 2126, at *9 (Tex. App.—Corpus Christi Mar. 22, 2010, orig. proceeding) (mem. op.).  Shamoun's amended motion to transfer also failed to specifically deny YIG's venue allegations. Instead, that motion argued exclusively that transfer was warranted either:  (1) to Travis County because it is a mandatory venue, or (2) to Dallas County because that is the county of defendants' residence and place of business.

Because Shamoun never properly denied YIG's venue allegations, the trial court was required to consider them as true.  *See* TEX. R. CIV. P. 87(3)(a).  YIG's allegations

---

[22] That issue, raised in Shamoun's petition for writ of mandamus, will be addressed *infra* section II.C.

included a claim that Shamoun breached its fiduciary duties by "represent[ing YIG] in the course of the global settlement, and extract[ing] terms and conditions of settlement for the benefit of [Shamoun] (who were representing [YIG]) and to the detriment of [YIG]." YIG later alleged that its intervention in Yarto's suit is proper; that "maintaining venue [in Hidalgo County] as to [YIG] does not unfairly prejudice [Shamoun]"; that "there is an essential need to have [YIG's] claims tried in" Hidalgo County; and that Hidalgo County "is a fair and convenient forum for all parties." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(1)–(4). Moreover, Yarto stated in his affidavit that "[t]he Settlement Agreement was sent to me in Hidalgo County" and "[t]he Settlement was signed by me in Hidalgo County." These allegations, taken as true, constitute probative evidence that a "substantial part of the events or omissions giving rise to [YIG's] claim occurred" in Hidalgo County. Therefore, the trial court did not err in denying Shamoun's motion to transfer YIG's suit. *See Henry,* 274 S.W.3d at 190 (citing *Chiriboga,* 96 S.W.3d at 678).

We overrule Shamoun's issue in appellate cause number 13-11-00256-CV as it relates to YIG.

## C.    Petition for Writ of Mandamus

In appellate cause number 13-11-00281-CV, Shamoun asks that we issue a writ of mandamus compelling the trial court to: (1) grant Shamoun's motion to transfer; and (2) grant the agreed motion to transfer filed by Yarto. Shamoun specifically alleges that Yarto and YIG consented to the venue transfer by entering into the settlement agreement and, in the case of Yarto, by filing an agreed motion to transfer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b) (West Supp. 2010); *see also id.* § 15.063(3) (West 2002).

### 1.    Standard of Review

26

Ordinarily, mandamus will issue only to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The Texas Supreme Court has held that, "[g]enerally, an appellate remedy is adequate even though it involves delay and more expense than obtaining an extraordinary writ" and that "venue determinations as a rule are not reviewable by mandamus." *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999); *In re Mendoza*, 83 S.W.3d 233, 236 (Tex. App.—Corpus Christi 2002, orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(c) (West 2002) ("A court's ruling or decision to grant or deny a transfer under Subsection (b) [providing for transfer based on the non-mandatory venue provisions of subchapters A or C of chapter 15] is not grounds for appeal or mandamus and is not reversible error."); *In re Gibbs*, No. 13-08-00134-CV, 2008 Tex. App. LEXIS 2327, at *2 (Tex. App.—Corpus Christi Apr. 1, 2008, orig. proceeding) (mem. op.) (per curiam) ("We lack jurisdiction to issue writs of mandamus to supervise or correct incidental trial rulings when there is an adequate remedy by appeal . . . . Incidental rulings include venue determinations.").

However, an exception to this rule exists for the mandatory venue provisions contained in subchapter B of chapter 15 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011–.020 (West Supp. 2010). Mandamus relief is available when a trial court erroneously denies enforcement of one of those provisions. *Id.* § 15.0642 ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter."). Moreover, when enforcement of a mandatory venue provision is sought, the relator need not show that it has an inadequate remedy by appeal. *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d

27

653, 657 (Tex. 2005) (orig. proceeding) (citing *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding)).

### 2. Applicable Law

In general, the fixing of venue by contract is invalid. *In re Great Lakes Dredge & Dock Co.*, 251 S.W.3d 68, 76 (Tex. App.—Corpus Christi 2008, orig. proceeding) (citing *Fid. Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972)). An exception to that general rule appears in section 15.020 of the civil practice and remedies code, which states that contractual venue selection clauses may be enforceable in cases involving "major transactions." TEX. CIV. PRAC. & REM. CODE ANN. § 15.020. A "major transaction" is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* § 15.020(a).[23] Section

---

[23] The definition of "major transaction" excludes transactions "entered into primarily for personal, family, or household purposes, or to settle a personal injury or wrongful death claim . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a) (West Supp. 2010). Moreover, the mandates of section 15.020 are not applicable where: (1) the agreement regarding venue was unconscionable at the time that it was made; (2) the agreement regarding venue is voidable under chapter 272 of the business and commerce code, relating to construction and repairs of improvements to real estate; or (3) venue is established under a statute other than title 2 of the civil practice and remedies code. *Id.* § 15.020(d).

It is undisputed that these caveats do not apply, with one exception: YIG contends that the agreement regarding venue was unconscionable at the time it was made. We disagree. All parties to the December 9, 2010 agreement were sophisticated business entities and were represented by competent counsel throughout the settlement negotiations. Though YIG complains that Shamoun was representing it at the time the settlement was reached, the December 1, 2010 letter sent by Shamoun to YIG clearly advised YIG that Shamoun's representation of YIG had in fact ceased. Moreover, an agreement to litigate in a forum in which the parties had already participated in mediation is not inherently unfair. We find that the venue selection clauses in the December 9, 2010 settlement agreement were not unconscionable at the time they were made. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348–49 (Tex. 2008) (orig. proceeding) ("Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.")). Whether venue was in fact proper is a separate matter that will be fully addressed herein.

28

15.020 is one of the mandatory venue provisions contained in chapter 15 of the civil practice and remedies code and is therefore enforceable by mandamus. *See id.* § 15.0642.

### 3.    Analysis

In its petition for writ of mandamus, Shamoun contends that the settlement agreement executed on December 9, 2010, evidenced a "major transaction" as defined by the statute. We agree. The agreement was in writing and called for a party to the agreement, YITC, to make settlement payments totaling $1,777,500. The amounts of the payments were explicitly set forth in the agreement. *Cf. In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 Tex. App. LEXIS 7949, at *2 (Tex. App.—Dallas Oct. 13, 2009, orig. proceeding) (mem. op.) (concluding that section 15.020 did not apply because agreement did not state the value of consideration). Yarto contends that section 15.020 does not apply to him because, although the agreement provided for payments in excess of $1 million to be made, Yarto "neither paid nor received $1 million from anyone." However, the statute does not require that a party to the potentially transferred lawsuit be obligated to pay or entitled to receive $1 million or more in consideration; instead, it merely requires that "a person" be obligated to pay or entitled to receive such consideration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a). Moreover, though the statute does not define "person," the Texas Supreme Court has implied that transactions solely between corporate entities may be subject to section 15.020. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d at 657–58 (holding that section 15.020 was not applicable to suit arising from insurance contract between

29

corporate entities only because insurance coverage limits could not be included in the "aggregate stated value" of consideration).[24]

We must next determine whether the actions brought by Yarto and YIG, respectively, "ar[ose] from" the transaction evidenced by the December 9, 2010 agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b).

Yarto's claims were first brought several months before the global settlement agreement was finalized. In a 2008 memorandum opinion, the Fourteenth Court of Appeals held that "[i]t would be erroneous to conclude that venue of a suit is fixed by agreement under section 15.020(b) when the claimed agreement was not executed until weeks after suit was filed." *In re Medical Carbon Research Institute, L.L.C.*, No. 14-08-00104-CV, 2008 Tex. App. LEXIS 2518, at *4 (Tex. App.—Houston [14th Dist.] Apr. 9, 2008, orig. proceeding) (mem. op.) (per curiam). We agree with that court's reasoning. Venue is to be determined by examining the facts existing at the time the cause of action accrued. TEX. CIV. PRAC. & REM. CODE ANN. § 15.006 (West 2002). Yarto filed suit on April 28, 2010, more than seven months before the settlement agreement was executed on December 9, 2010. The facts at the time of the accrual of Yarto's cause of action therefore did not include the existence of a settlement agreement containing venue selection provisions. *See id.* It follows that Yarto's claims did not "arise from" the transaction evidenced by that agreement, and section 15.020 does not apply to Yarto's claims.[25]

---

[24] The statute is ambiguous in that it does not state whether one single party must be obligated to pay or entitled to receive more than $1 million, or if multiple obligations between various parties may be aggregated in order to reach the $1 million amount. In any event, assuming without deciding that the former construction of the statute is correct, the agreement at issue qualifies as a "major transaction" because one single party—YITC—was obligated to pay the entire $1,777,500 in consideration.

[25] Shamoun argues that Yarto waived his ability to oppose transfer to Travis County by filing the

On the other hand, YIG's petition in intervention was filed on January 19, 2011, several weeks after the settlement agreement was executed. Although YIG's petition raised many of the same allegations as those originally raised by Yarto, YIG's principal complaint against Shamoun is that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]." Accordingly, YIG's claim "ar[ose] from" the settlement agreement.

But this observation does not end our inquiry, because the major transaction statute does not apply to *all* suits arising out of major transactions. Instead, subsections (b) and (c) of the statute restrict the operation of the statute to limited circumstances.

First, subsection (b) states that "[a]n action arising from a major transaction shall be brought in a county *if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county*." *Id.* § 15.020(b) (emphasis added). Here, "the party against whom the action is brought"— i.e., Shamoun—did not agree in writing that "a suit arising from" a major transaction may be brought in Travis County. Shamoun was not a signatory or party to the settlement agreement, and so it cannot be said to have "agreed in writing" as to venue in that agreement, regardless of whether Shamoun is considered a third-party beneficiary to that agreement. And, although counsel for Shamoun signed the written "Agreed Motion to Transfer Venue" filed by Yarto, we have already held that Yarto's suit did not "arise

December 29, 2010 agreed motion to transfer. *See Farris v. Ray*, 895 S.W.2d 351, 352 (Tex. 1995). We do not find this argument persuasive because, regardless of what position Yarto may have taken in the trial court, Shamoun still failed to show that a mandatory venue statute compelled transfer of Yarto's claims. Therefore, Shamoun is not entitled to mandamus relief on those grounds.

31

from" a major transaction. *See id.* Subsection (b) therefore does not apply to YIG's claims.

Next, subsection (c) of the statute states that "[a]n action arising from a major transaction *may not* be brought in a county" if:

(1) the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

(2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

*Id.* § 15.020(c) (emphasis added).

We first examine the applicability of subsection (c)(2). Here, "the party bringing the action"—i.e., YIG—agreed in section 27 of the settlement agreement that "ANY AND ALL CLAIMS . . . RELATING TO THIS AGREEMENT . . . SHALL BE FILED AND MAINTAINED ONLY IN AN APPROPRIATE STATE OR FEDERAL COURT IN TRAVIS COUNTY, TEXAS." This is a written agreement that "an action arising from" the major transaction "must be brought" in Travis County. *See id.* § 15.020(c)(2). Accordingly, subsection (c)(2) will compel the transfer of YIG's suit if and only if "the action *may be brought* in [Travis County], under this section or otherwise. . . ." *Id.* § 15.020(c)(2) (emphasis added).

We cannot conclude that YIG's action "may be brought" in Travis County. As noted, the general venue statute states that all lawsuits shall be brought "in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred," or in the county of the defendant's residence or principal office. *Id.* §

32

15.002(a). The principal complaint against Shamoun contained in YIG's petition in intervention is that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]." However, YIG does not allege, and the record does not reveal, that at least a "substantial part" of the actions taken by Shamoun as alleged by YIG occurred in Travis County. *See id.* § 15.002(a)(1).[26] Though the 2010 mediation occurred in Travis County, YIG's pleadings do not state implicitly or explicitly that any part of Shamoun's allegedly tortious acts or omissions took place at that mediation. Moreover, Travis County is not the location of Shamoun's principal place of business, nor is it the county of residence of either Shamoun's or YIG's principals. *See id.* § 15.002(a)(2)–(4). Travis County is therefore not a proper venue under the general venue statute, and so it cannot be said that YIG's action "may be brought" there. *See id.* § 15.020(c)(2). Subsection (c)(2) does not apply.

We turn finally to subsection (c)(1) of section 15.020, under which an action arising from a major transaction may not be brought in a particular county if "the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction." *Id.* § 15.020(c)(1). The settlement agreement was in writing and was executed by the party bringing the action—i.e., YIG—and contained two sections under which YIG arguably agreed that "an action arising from the transaction may not be brought" in Hidalgo County, the county where suit was filed. Section 15 of the agreement stated that "none of the Yarto Parties [including YIG]. . . shall be

_____

[26] We note that YIG's petition in intervention, in contrast with Yarto's live petition, did not allege that Shamoun "disclosed confidential communications" in Travis County.

33

permitted to bring a Shamoun Claim in any court not located in Travis County, Texas."
A "Shamoun claim" is defined as "any claim, lawsuit, complaint or proceeding (whether judicial or otherwise) brought by [Yarto or YIG] . . . against Shamoun and/or any of its partners or affiliates."  Thus, a "Shamoun claim" may or may not also be "an action arising from the transaction."  As previously noted, YIG also agreed in section 27 of the settlement agreement that "ANY AND ALL CLAIMS . . .  RELATING TO THIS AGREEMENT . . . SHALL BE FILED AND MAINTAINED ONLY IN AN APPROPRIATE STATE OR FEDERAL COURT IN TRAVIS COUNTY, TEXAS."  Though this section specifies Travis County as the only suitable venue for an action arising out of the transaction, it does not explicitly state that such an action must *not* be brought in any particular county.

Assuming, without deciding, that these sections constitute written agreements by YIG that "an action arising from the transaction" may not be brought in Hidalgo County, we nevertheless find that subsection (c)(1) is inapplicable.  That subsection applies only when "the action may be brought in another county of this state or in another jurisdiction."  *Id.*  "Another county," in the context of subsection (c)(1), clearly means a county that has not been excluded as a proper venue under the pertinent written agreement.  *See id.*  Here, sections 15 and 27 of the settlement agreement purport to exclude all counties other than Travis County as venues for suit, and so subsection (c)(1) will apply only if YIG's suit "may be brought" in Travis County.  We have already concluded that it may not.  Therefore, subsection (c)(1) does not apply.

As noted, mandamus will generally issue to correct a venue ruling only if a mandatory venue provision located in subchapter B of chapter 15 of the civil practice and remedies code applies.  *See id.* § 15.0642; *In re Masonite Corp.*, 997 S.W.2d at

34

The major transaction statute, section 15.002, is the only mandatory venue provision invoked by Shamoun in its petition for writ of mandamus. Because we have concluded that section 15.002 does not apply to either Yarto's or YIG's suits, Shamoun is not entitled to a writ of mandamus compelling the trial court to transfer venue to Travis County.

## III. CONCLUSION

In appellate cause number 13-11-00087-CV, we reverse the trial court's judgment granting YIG's request for a temporary anti-suit injunction, and we remand the cause for further proceedings consistent with this opinion. In appellate cause number 13-11-00256-CV, we affirm the trial court's judgment denying Yarto and Shamoun's agreed motion to transfer. Finally, in appellate cause number 13-11-00281-CV, we deny Shamoun's petition for writ of mandamus.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
31st day of May, 2012.

35