**Reversed and Remanded and Opinion Filed December 19, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01224-CV

### UNION PACIFIC RAILROAD COMPANY, Appellant
### V.
### CATHERINE STOUFFER, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF GARY LEE STOUFFER, JR. AND AS NEXT FRIEND OF SHANNON STOUFFER AND SHANE STOUFFER, ET AL., Appellees

### On Appeal from the 116th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-12-15204

## OPINION

Before Justices FitzGerald, Lang, and Myers
Opinion by Justice FitzGerald

This interlocutory appeal arises from the trial court's order denying Union Pacific Railroad Company's motions to transfer venue.[1] Because we conclude plaintiffs did not meet their burden to establish that Union Pacific maintains a principal office in Dallas County, we reverse the trial court's order.

## BACKGROUND

On November 15, 2012, a truck and flatbed trailer carrying military veterans and their spouses in a parade entered an active railroad crossing and was struck by a train in Midland,

---

[1] Union Pacific filed three identical motions to transfer venue in response to separate petitions filed by plaintiffs and interveners.

Texas. Several individuals were injured or killed. Smith Industries, Inc. ("Smith") provided the truck and trailer, and the train was operated by Union Pacific Railroad Co. ("Union Pacific").

As a result, Catherine Stouffer, Ada Stouffer, and Gary Stouffer filed this personal injury and wrongful death suit against Smith and Union Pacific in Dallas County. Petitions in Intervention were filed by Angela Boivin, Leonce Boivin, Lucette Boivan, and Tiffaine Lubbers (Collectively, with the Stouffers and subsequent interveners "Plaintiffs"). The petition asserted that Smith is a Texas corporation with its principal place of business in Midland, Texas. The petition further alleged that Union Pacific is a foreign corporation authorized to do business in the state of Texas, and maintains a principal office in Dallas County. Union Pacific filed a motion to transfer venue from Dallas County to Midland County.[2] In so doing, Union Pacific denied that it maintains a principal office in Dallas County and asserted that its sole principal office in Texas is located in Harris County.

The plaintiffs involved in the case at that time responded to the motion, and Union Pacific replied. The court conducted a hearing and denied the motion to transfer. Following the trial court's determination on venue, several additional petitions in intervention were filed.[3] This interlocutory appeal challenging the trial court's determination on venue followed.

**ANALYSIS**

*Appellate Jurisdiction*

Plaintiffs contend that appellate jurisdiction is lacking and have filed a motion to dismiss the appeal. Union Pacific contends that appellate jurisdiction is proper.

---

[2] Smith also filed a motion to transfer venue, but that motion is not at issue here.

[3] The additional plaintiffs include: Richard Sanchez, Heather Sanchez, Todd King, Laci King, Aaron Kibby, Laura Kibby, Thomas Pleyo, Kelli Pleyo, Shane Ladner, Margaret Ladner, Mary Michael, Travis Reichert, Elsie Reichert, Michael Lubbers, Karen Lubbers, Patrick Michael, and Sherry Michael.

Interlocutory orders generally are not appealable. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[T]he general rule . . . is that an appeal may be taken only from a final judgment."). The legislature has reinforced the general rule in the venue context by providing that "[n]o interlocutory appeal shall lie from the [trial court's venue] determination." TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) (West 2002). But the legislature has also authorized interlocutory appeals from certain venue rulings. The exception is found in section 15.003, which provides in pertinent part as follows:

> (a) In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:
>
> > (1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;
> >
> > (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;
> >
> > (3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and
> >
> > (4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.
>
> (b) ***An interlocutory appeal may be taken of a trial court's determination under Subsection (a) that***:
>
> > (1) ***a plaintiff did or did not independently establish proper venue***; or
> >
> > (2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)-(4).

*Id.* § 15.003(a)–(b) (West Supp. 2012) (emphasis added). Before section 15.003 was amended in 2003, its interlocutory-appeal provision was quite different. It provided as follows:

> Any person seeking intervention or joinder, who is unable to independently establish proper venue, or a party opposing intervention or joinder of such a person may contest *the decision of the trial court allowing or denying intervention or joinder* by taking an interlocutory appeal to the court of appeals district in which the trial court is located under the procedures established for interlocutory appeals.

Act of May 8, 1995, 74th Leg., R.S., ch. 138, 1995 Tex. Gen. Laws 978 (amended 2003) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 15.003 (West Supp. 2012)) (emphasis added). Thus, under the prior law, interlocutory appellate jurisdiction was limited to review of joinder and intervention rulings made in a venue context. After the 2003 amendment, interlocutory appellate jurisdiction in multiple-plaintiff cases extends to the determination of whether the plaintiffs have independently established proper venue or not. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b)(1).

Thus, the question presented in this case is whether the trial court's order denying Union Pacific's motions to transfer venue is a "determination under Subsection [15.003](a) that [appellees] did or did not independently establish proper venue." *Id*. When we interpret a statute, our task is to ascertain the legislature's intent. *See Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 901 (Tex. 2010). We begin with the statutory text, relying whenever possible on the plain meaning of the words of the statute. *Id*. Under the plain language of this statute, the first requirement imposed by section 15.003(b)(1) is that the trial judge's order must be one "under Subsection [15.003](a)." Section 15.003(a) sets out some specific venue rules applicable only to multiple-plaintiff cases. Thus, the first requirement imposed by section 15.003(b)(1) is that the trial court's order must be made in a case involving multiple plaintiffs. This requirement is met on the facts of this case. The second requirement for appellate jurisdiction to exist under section 15.003(b)(1) is that the trial court's order must be one that determines whether a plaintiff independently established proper venue. In this case, every plaintiff relied on the "defendant's principal office" venue provision to try to establish proper venue in Dallas County. *See* TEX.

–4–

CIV. PRAC. & REM. CODE ANN. § 15.002(a)(3) (providing that venue is proper "in the county of the defendant's principal office in this state, if the defendant is not a natural person"). Nevertheless, section 15.003(a) still obliged each plaintiff to establish venue "independently" of every other plaintiff. Nothing in section 15.003 suggests that section 15.003(b)(1)'s interlocutory appeal is available only if different plaintiffs rely on different theories of proper venue. Accordingly, we conclude that the trial court's ruling that venue in Dallas County is proper for all plaintiffs was a determination that every plaintiff "independently establish[ed] proper venue" within the meaning of section 15.003(b)(1), and we have interlocutory appellate jurisdiction.

Our interpretation of section 15.003(b) is consistent with the interpretation adopted by the Corpus Christi Court of Appeals in *Shamoun & Norman, LLP v. Yarto International Group, LP*, 398 S.W.3d 272 (Tex. App.—Corpus Christi 2012, pet. dism'd). That case involved two plaintiffs, one of which had become a plaintiff by intervening in the case. *Id.* at 280. The defendants moved to transfer venue, and the trial court denied the motion. *Id.* at 280–81. The defendants perfected an interlocutory appeal from that ruling, and the court of appeals agreed with the defendants that interlocutory appellate jurisdiction was proper under section 15.003(b). *Id.* at 284–87. The court read the statute broadly, concluding that the 2003 amendments meant that "interlocutory appeals are available for venue determinations in any case involving multiple plaintiffs." *Id.* at 285. The court later reiterated, "[T]he 2003 amendment expanded interlocutory appellate jurisdiction under section 15.003(b) to all venue rulings in cases involving multiple plaintiffs." *Id*, at 287 n.18. We agree because, in a multiple-plaintiff case, every venue ruling is necessarily a determination that a plaintiff did or did not independently establish proper venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).

By interpreting section 15.003(b) this way, we necessarily disagree with the position taken by the San Antonio Court of Appeals in *Basic Energy Services GP, LLC v. Gomez*, 398

–5–

S.W.3d 734 (Tex. App.—San Antonio 2010, order) (per curiam), *disp. on merits*, 2010 WL 4817053 (Tex. App.—San Antonio Nov. 24, 2010, pet. denied) (mem. op.). In that case, Nelda Gomez sued Basic Energy, The Phia Group, and Amador and Brittany Lazo. *Id.* at 735–36. The Lazos then filed third-party claims against Basic Energy, The Phia Group, and Michael Sweeney. *Id.* at 736. Basic Energy filed a motion to transfer venue in which it invoked section 15.003, but in its reply brief and its oral argument it also relied on the general venue statute, section 15.002. *Id.* at 736, 737. The trial court denied Basic Energy's motion to transfer without specifying reasons, and Basic Energy perfected an interlocutory appeal from the ruling. *Id.* at 736. The court of appeals ordered the trial court to make a clarifying order, and in an accompanying opinion the appellate court embraced a narrow interpretation of section 15.003(b). According to the court, the right of interlocutory appeal "extends only to plaintiffs who are unable to independently establish proper venue apart from the joinder factors set out in section 15.003(a)." *Id.* The court then said, "Sections 15.003(b)–(c) permit a party challenging the joinder of a plaintiff who cannot independently establish proper venue to take an interlocutory appeal." *Id.* at 737. Finally, the court concluded that interlocutory appellate jurisdiction would be proper if the trial court's ruling was based on "the joinder requirements pursuant to section 15.003" but not if the trial court's ruling was based on a conclusion that Gomez and the Lazos had independently established proper venue pursuant to section 15.002, the general venue statute. *Id.* The trial court issued an order stating that it had denied the motion to transfer based on section 15.002, so the court of appeals dismissed the appeal. 2010 WL 4817053, at *3–*5.

The *Basic Energy* court erred by concluding that section 15.003(b) authorizes appeals only from venue decisions that are based on joinder rulings under section 15.003(a). *See Basic Energy*, 398 S.W.3d at 736–37. Although this interpretation may have been correct before the 2003 amendments were adopted, the post-2003 version of section 15.003(b)(1) plainly permits

interlocutory appeals from pure venue rulings—that is, from determinations that "a plaintiff did or did not independently establish proper venue." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b)(1); *see also Shamoun & Norman*, 398 S.W.3d at 287 n.18 ("[T]he plain language of the [amended] statute indicates that the Legislature did not intend to limit interlocutory appeals to those cases where a plaintiff meets or fails to meet the joinder requirements pursuant to section 15.003.") (internal quotations omitted). And, as the Corpus Christi Court of Appeals pointed out, the only way a plaintiff can "independently establish proper venue" is to show venue under a general, permissive, or mandatory venue statute, such as section 15.002. *See Shamoun & Norman*, 398 S.W.3d at 287 n.18.[4] Thus, contrary to the *Basic Energy* court's conclusion, a ruling on a motion to transfer venue can be made under both section 15.002 and section 15.003. The ruling in the instant case is an example of such a ruling: it was made under section 15.002 because plaintiffs relied on the principal-office provision of section 15.002(a)(3) for proper venue, and it was made under section 15.003 because this is a multiple-plaintiff case.[5]

To summarize, in a multiple-plaintiff case, an order denying a motion to transfer venue of the entire case is a determination that every plaintiff independently established proper venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a). Such orders are subject to interlocutory appeal. *Id*. § 15.003(b)(1). Accordingly, we have appellate jurisdiction over this appeal, and we deny appellees' motion to dismiss the appeal.

---

[4] The *Shamoun* court also pointed out that the *Basic Energy* opinion relies on appellate decisions that pre-date the 2003 amendments to section 15.003. 398 S.W.3d at 287 n.18.

[5] We note that two other courts of appeals have entertained interlocutory appeals from venue rulings in multiple-plaintiff cases without questioning or examining the propriety of appellate jurisdiction. *See Crown Cent. LLC v. Anderson*, 239 S.W.3d 385 (Tex. App.—Beaumont 2007, pet. denied); *Siemens Corp. v. Bartek*, No. 03-04-00613-CV, 2006 WL 1126219 (Tex. App.—Austin Apr. 28, 2006, no pet.) (mem. op.).

*Venue—Dallas*

Union Pacific argues the trial court erred in denying its motion to transfer venue. According to Union Pacific, venue is not proper in Dallas County because it does not maintain a principal office here.

Generally, the plaintiff chooses the venue of the case, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue. *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260–61 (Tex. 1994); *KW Constr. v. Stephens & Sons Concrete Contractors, Inc*., 165 S.W.3d 874, 879 (Tex. App.—Texarkana 2005, pet. denied). Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit. *Wilson*, 886 S.W.2d at 260–61; *In re Masonite Corp*., 997 S.W.2d 194, 197 (Tex. 1999); *KW Constr*., 165 S.W.3d at 879; *Chiriboga v. State Farm Mut. Ins. Co*., 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.); *see also* TEX. R. CIV. P. 87(2)(a), (3)(a). Plaintiff satisfies its burden of presenting prima face proof "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a). Generally, if the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another county of proper venue. TEX. CIV. PRAC. & REM. CODE ANN. § 15.063(1) (West 2002); *Wilson*, 886 S.W.2d at 260. In reviewing a venue decision, an appellate court conducts an independent review of the entire record to determine whether any probative evidence supports the trial court's venue decision. TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(b) (West 2002); *Wilson*, 886 S.W.2d at 261.

The venue provision upon which plaintiffs rely in the instant case is set forth in section 15.002(a)(3) of the civil practice and remedies code. This section provides that a lawsuit may be brought "in the county of the defendant's principal office in this state, if the defendant is not a

natural person." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(3) (West 2002). "Principal office" is defined as "a principal office of a corporation . . . in which the decision makers for the organization within this state conduct the daily affairs of the organization. The mere presence of an agency or representative does not establish a principal office." TEX. CIV. PRAC. & REM. CODE ANN. § 15.001(a) (West 2002).

The Texas Supreme Court has concluded that the phrase "a principal office" means that a corporation may have more than one principal office in this state. *In re Missouri Pacific Railroad Co.*, 998 S.W.2d 212, 217 (Tex. 1999). To establish venue based upon a principal office, plaintiffs must show: (1) the employees in the county where the lawsuit was filed are "decision makers" for the company (hereinafter, "decision makers") and (2) the employees in the county where the lawsuit was filed have "substantially equal responsibility and authority" relative to other company officials within the state (hereinafter, "substantial equality") *Id*. at 217, 220. In so concluding, the court rejected the argument that a principal office is any place where company officials make decisions about the company's business because "such a broad definition would include agencies and representatives, which the statute expressly rejects." *Id*. at 217. Rather, "decision makers" who "conduct the daily affairs" are different kinds of officials than agents or representatives. *Id*. And the term "daily affairs" does not mean relatively common, low-level management decisions. *Id*.

Plaintiffs' petition asserts that defendant Smith has its principal office in Midland and Union Pacific maintains a principal place of business in Dallas County. Plaintiffs assert that venue is proper in Dallas County because at least one defendant (Union Pacific) maintains a principal place of business in Dallas County. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.002(a)(3), 15.005.

Our review is de novo. *Wilson*, 886 S.W.2d at 261. The key to a straightforward disposition concentrates on the second factor, the substantial equality prong. That is, did plaintiffs present evidence making a prima facie case that Union Pacific, Dallas based employees Cook and Anderson have substantially equal authority to the company executives in Harris County. We conclude that plaintiffs failed to establish the second prong of the principal office test—that the employees in the Dallas office possess "substantially equal responsibility and authority" relative to other company officials within the state.

We begin our review with the affidavit of Robert Rietveld that was filed by Union Pacific in support of its motion to transfer venue. Plaintiffs did not object to this affidavit. Essentially, the affidavit provides information about Union Pacific's corporate structure and officers and describes its principal office in Texas as the office in Harris County.

Specifically, Rietveld states that he is the Southern Region Finance Director for Union Pacific. Rietveld's office is in Harris County, and he states that the Harris County office is the southern region headquarters for Union Pacific.

Rietveld explains that for purposes of allocating top level decision-making responsibility across the twenty-three states in which it operates, Union Pacific is divided into three regions: the southern, western, and northern regions. Each region covers multiple states, and the southern region includes Kansas, Missouri, Oklahoma, Arkansas, Louisiana, and Texas. Rietveld states that Union Pacific's principal office in Texas is located in the southern region headquarters in Harris County, Texas.

Rietveld further explains that Union Pacific has numerous service units within the southern region. The Fort Worth service unit oversees Union Pacific's operations from Midland to Dallas, and includes the crossing where the accident made the basis of this lawsuit occurred.

Rietveld identified the eight highest ranking Union Pacific employees in Texas. Six of them office in Harris County: (1) the Regional Vice President Operations Southern Region, (2) the Assistant Vice President Operations Southern Region, (3) the Chief Engineer-Maintenance of Way Southern Region, (4) General Superintendent-Mechanical Maintenance, (5) General Superintendent, and (6) the General Solicitor. The remaining two—another General Superintendent and a Superintendent—office in Fort Worth and San Antonio. None of these executives offices in Dallas County.

The Southern Region Vice President, Greg Workman, is Union Pacific's highest ranking officer in the state of Texas, and he supervises the Assistant Vice President of Operations, the General Superintendent, and other high level managers such as the Chief Engineer. Rietveld stated that the responsibilities of the Southern Region Vice President include supervising: (a) the movement from point A to point B of all Union Pacific's operating trains in the Southern region; (b) the safe operations of the railroad; (c) all of the train crews and employees who inspect and service the locomotives and railcars; and (d) the transportation of all freight. In addition to supervising the high level managers in Texas, the Southern Region Vice President, along with the Assistant Vice President of Operations, is responsible for generating and executing the transportation plan for all of Union Pacific's railroad operations in Texas. All decisions regarding the transportation plan are made out of the Southern region headquarters in Harris County. The Southern Region Vice President is also responsible for supervising all of the employees who work for the Transportation Department in Texas.

Once Union Pacific challenged plaintiffs' choice of venue by filing its motion to transfer and Rietveld's affidavit summarized above, plaintiffs had the burden to present a prima facie case that venue is proper in Dallas. That is, plaintiffs had to establish both prongs under the *Missouri Pacific* standard—decision makers and substantial equality. However, plaintiffs' venue

proof did not controvert the facts in the Rietveld affidavit or explain the relationship between the Harris County office and executives and the employees in the Dallas office. Instead, plaintiffs' venue proof focused exclusively on the first prong of the *Missouri Pacific* test—decision makers.[6] More specifically, their proof focused entirely on the employees in the Dallas office. According to plaintiffs, Anderson and Cook are decision makers who office in Dallas. Anderson's deposition reflects that he is employed by Union Pacific as Superintendent of intermodal operations[7] and is responsible for the intermodal South region. He is the highest ranking employee of the Southern region, and is responsible for the intermodal facilities in his region. Anderson reports to Kate Betsworth, a vice president of the company who offices in Omaha, Nebraska. Betsworth reports to Randy Blackburn, the vice president of transportation, who in turn reports to Lance Fritz, the executive vice-president of transportation. Fritz reports to the Chief Executive Officer of the company.

Anderson testified that Harris County is the county in Texas where the daily affairs of the transportation department are conducted. The intermodal division is part of the transportation department. With regard to intermodal operations, the Harris County facilities are subordinate to and controlled from Dallas. Anderson testified that he does not make all decisions with regard to the intermodal movement of freight, but he does make the decisions *within the terminals themselves*. Anderson explained that Union Pacific has contractors that do the work at the intermodal terminals, and he does not select the contractors that do the work. He agreed that he is the decision maker that conducts the daily affairs of the intermodal department of the southern region, but some of the operational decisions concerning the daily affairs of the department are

---

[6] Plaintiffs submitted excerpts from the depositions of Eric Anderson, Shawn Cook, and Kate Betsworth, along with job descriptions for Cook and Anderson, company organizational charts, Union Pacific corporate filings, documents reflecting the volume of Union Pacific's business in Dallas, and Union Pacific's discovery responses.

[7] At oral argument, Union Pacific explained that intermodal operations" are operations involving the transfer of goods onto and off trains.

–12–

made by his superiors in Omaha. When asked if he was the senior decision maker for Union Pacific's Intermodal department Southern facilities, Anderson stated, "operations *within the fence line of the terminal*, yes." (Emphasis added.) Anderson admitted that other than himself, and his superiors in Omaha, no one else makes decisions concerning the daily affairs of the intermodal facilities that operate in the Southern region. Anderson was asked, "Well, the buck stops with you, doesn't it?" Anderson replied, "Yes." Anderson's supervisor in Omaha confirmed that Anderson has management responsibilities for the intermodal facilities in the Southern region.

Anderson manages a $50–$80 million annual budget. He explained that the lift volume gauges the size of an operation for all of the intermodal terminals in the Union Pacific System. In 2012, the Southern division had the largest intermodal lift of the four intermodal divisions. Company-wide, all intermodal operations (including those outside the Southern region) accounted for $3,955 billion in annual revenue for 2012.

Cook testified that he is the senior manager of automotive facilities, and offices in Dallas County. Cook is responsible for automotive facilities in the Southern region. The Southern region is the largest automotive region for Union Pacific. Automotive and intermodal operations used to be part of the same division, but split at some point. Now, intermodal and automotive operations report to different vice presidents in Omaha. Cook reports to Jack Jones, the Director of Automotive Facilities and Planning in Omaha. Cook is not subordinate to or controlled by anyone in Harris County. He does not control any employees.

There are six automotive contractors that work for Union Pacific. Of these, four operate in the facilities managed by Cook. Cook's primary responsibility is to assure the quality of the work of these contractors, who load and unload automobiles from trailers.

–13–

Cook has decision making authority *within the facilities*. In this regard, he determines whether a particular contractor is providing the quality of service they are supposed to provide. Cook stated that he can't make all decisions *inside the facilities*, but he does make the day-to-day decisions. Some decision making is made in Omaha. Cook agreed that since his office is in Dallas, the principal Texas office for automotive facilities is in Dallas. Neither the intermodal nor the automotive divisions of Union Pacific are subordinate to or report to another Texas office. Instead, both report to Omaha, Nebraska.

Plaintiffs rely on this evidence, as well as the formal job descriptions for Anderson and Cook, to argue there is no portion of Union Pacific's intermodal and automotive business that has a principal office in Harris County; Union Pacific's intermodal and automotive divisions are based in Dallas County. Therefore, plaintiffs insist Union Pacific has a principal office in Dallas County. Union Pacific responds that plaintiffs seek to view these two divisions of the company in a vacuum, and the evidence does not establish that Cook and Anderson have decision making authority of the magnitude required.

In *Missouri Pacific*, the court held that "[a] party cannot prove a prima facie case that a county has a principal office *without evidence* of the corporate structure and the authority of the officers in the county of suit as compared with the remainder of the state." *Missouri Pacific*, 998 S.W.2d at 220 (emphasis added). In that case, plaintiffs endeavored to show that the railroad had a principal office in Jefferson County. The court observed, however, that plaintiffs focused largely on the extent of operations in Jefferson County, but "did little to define the role of any of the decision makers in Jefferson County relative to the rest of the company." *Id*. In the absence of evidence showing how the Jefferson County officials' authority compared to others statewide, there could be no meaningful determination whether Jefferson County was a principal office. *Id.*

Likewise, plaintiffs here did not demonstrate that Anderson's and Cook's authority is substantially equal to others in the state. Instead, plaintiffs focused exclusively on the authority of these individuals within their divisions, and within and limited to their facilities, i.e., operations within the fence line of the terminal(s).

Although plaintiffs proved that the Dallas intermodal and automotive divisions do not report to Harris County, this does not support a conclusion that Cook and Anderson have comparable authority to the executives in Harris County. As a result, plaintiffs failed to establish prima facie that Dallas County is a principal office for Union Pacific. *See id.*

### Union Pacific's Reply Evidence

In the court below, Union Pacific filed a reply to plaintiffs' response to the motion to transfer venue, and attached evidence. Plaintiffs filed a "Claimants' Joint Objection and Sur Reply" to Union Pacific's reply. Plaintiffs assert "Claimants object to UP's reply evidence as an impermissible attempt to rebut Claimants' prima facie proof that venue is proper in Dallas County." This joint objection did not lodge specific objections to specific portions of Union Pacific's exhibits or move to strike the exhibits or any portions thereof.

Plaintiffs now advance the same argument on appeal, claiming the trial court struck the evidence and it is therefore not properly considered in our de novo review. We disagree.

In *Missouri Pacific*, the court observed that "the plaintiff has the burden to present prima facie proof . . . that venue is maintainable in the county of suit" and "the plaintiffs prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof." *Missouri Pacific*, 998 S.W.2d at 216. Contrary to plaintiffs' assertions, however, the record does not reflect that the trial court ruled on the plaintiffs' objection to the evidence, nor did it strike any evidence.

The trial court's statement in question is contained in the order denying the motion to transfer venue. The court's handwritten notation at the conclusion of the order states: "the court

–15–

further sustains claimants' joint objection to the evidence attached to Union Pacific's reply that *purports* to contradict, rebut, impeach, or disprove Claimants' prima facie case." (Emphasis added).This statement does correctly reflect the status of the law as enunciated in *Missouri Pacific* and quoted above, that is, that a plaintiffs' prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. The court did not rule that the evidence violated this legal principle and should be excluded, but only stated that it sustained the objection to evidence that "purports" to violate a legal principle. We are consequently left to speculate whether the court actually determined whether any of the reply evidence violated the legal principle, and if so, what evidence. It is not our province to speculate. It is the trial court's responsibility to make proper legal rulings on the evidence. Under these circumstances, we conclude the trial court's statement is not a legal ruling.

This Court was faced with a similar statement by a trial court in *Stewart v. Sanmina Texas, L.P.,* 156 S.W.3d 198, 206–07 (Tex. App.—Dallas 2005, no pet.). In that case, Stewart argued that the summary judgment evidence raised fact issues as to his claims. Before addressing Stewart's arguments, this Court paused to review the trial court's rulings on appellee's objections to Stewart's summary judgment evidence. This Court stated that appellee made numerous objections to Stewart's evidence by objecting to individual paragraphs of affidavits and exhibits and moved to strike the evidence. But the trial court did not address each objection; instead, the trial court's order granting in part the motion for summary judgment stated only that "to the extent any summary judgment evidence is mere conclusion or based upon speculation it cannot be considered for the purposes of the summary judgment record." During oral argument, appellees contended this quoted language was an implied ruling and constituted a striking of the evidence. This Court ultimately rejected appellee's argument that the statement by the trial court was an implied ruling that amounted to a striking of Stewart's evidence. *Id.*

In effect, the trial court's statement in this case only recites a principle of law and completely fails to rule upon the admissibility of specific evidence. It therefore does not constitute a legal ruling. The record does not indicate that plaintiffs sought a more specific ruling or sought to have any specific evidence stricken. In the absence of a ruling by the trial court, we conclude that the reply evidence is properly before us.

We have already concluded that plaintiffs failed to present prima facie proof of Union Pacific's corporate structure and Cook's and Anderson's authority relative to the corporate officers in the remainder of the state, without considering the reply evidence. The plaintiffs' evidence and the reply evidence provides additional descriptive detail relative to Union Pacific's corporate structure. We observe the reply evidence also describes the corporate structure as comprised of several Union Pacific executives in Harris County and that Anderson and Cook are not executives, but instead are ranked as lower-level Band "D" and Band "C" employees. For example, several layers of authority separate the highest ranking executive in Harris County from the highest ranking employee in Dallas County.

It was the plaintiffs' burden to show Anderson and Cook had substantially equal authority to the company executives in Harris County and elsewhere in the state, and plaintiffs failed to meet this burden. As a result, plaintiffs failed to show that Dallas County is a principal office for Union Pacific.

### Venue—Midland

If the plaintiff fails to discharge his burden of proof on venue, the burden shifts to the defendant to prove that venue is proper in its chosen county. *Missouri Pacific*, 998 S.W.2d 212, 216. Here, the relevant venue facts supporting venue in Midland County are undisputed. It is undisputed that Smith maintains its principal office in Midland County, and the accident made the basis of this lawsuit occurred in Midland County. Our inquiry need go no further.

–17–

Section 15.002(a)(1) of the civil practices and remedies code provides that venue for an action is proper in the county in which "all or a substantial part of the events or omissions giving rise to the claim occurred." TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(1) (West 2002). Section 15.002(a)(3) provides that venue is proper is the county of the defendant's principal place of business if the defendant is not a natural person. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(3). Pursuant to these general venue provisions, the undisputed facts show that venue is proper in Midland County as to Smith.

Because venue is proper in Midland as to Smith, it is also proper as to Union Pacific. Section 15.005 provides that where there are multiple defendants, and venue is proper as to at least one defendant, venue is then proper as to all defendants in all claims arising out of the same transaction, occurrence, or series of transactions or occurrences. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.005 (West 2002); *see also In re Reynolds*, 369 S.W.3d 638, 653 (Tex. App.—Tyler 2012, no pet.). Thus, upon remand, the trial court must transfer the case to Midland County.

## CONCLUSION

Union Pacific's issue is sustained. We reverse the trial court's order and remand the case for the trial court to enter an order transferring the case to Midland County.


/Kerry P. FitzGerald/

131224F.P05          KERRY P. FITZGERALD
                     JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

UNION PACIFIC RAILROAD
COMPANY, Appellant

No. 05-13-01224-CV        V.

CATHERINE STOUFFER,
INDIVIDUALLY AND ON BEHALF OF
THE ESTATE OF GARY LEE STOUFFER,
JR. AND AS NEXT FRIEND OF
SHANNON STOUFFER AND SHANE
STOUFFER, ET AL., Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-15204.
Opinion delivered by Justice FitzGerald.
Justices Lang and Myers participating.

In accordance with this Court's opinion of this date, the trial court's order is
**REVERSED** and this cause is **REMANDED** to the trial court for the entry of an order
transferring the case to Midland County.

It is **ORDERED** that appellant UNION PACIFIC RAILROAD COMPANY recover its
costs of this appeal from appellees CATHERINE STOUFFER, INDIVIDUALLY AND ON
BEHALF OF THE ESTATE OF GARY LEE STOUFFER, JR. AND AS NEXT FRIEND OF
SHANNON STOUFFER AND SHANE STOUFFER, ET AL.

Judgment entered December 19, 2013

/Kerry P. FitzGerald/
_____
KERRY P. FITZGERALD
JUSTICE