**AFFIRMED and Opinion Filed December 10, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00762-CV

**JIMMY ROACH AND ESTES EXPRESS LINES, Appellants**
**V.**
**KIMBERLY JACKSON, INDIVIDUALLY AND AS REPRESENTATIVE
OF THE ESTATE OF ERICA WOMACK;
CAROLYN JOHNSON-HARRIS, INDIVIDUALLY AND AS
REPRESENTATIVE OF THE ESTATE OF DANIEL ELLISON AND
MINORS D.R.E., M.O., J.O., AND K.E.;
BRYCE GUSMAN, CHARLES SULTON, AND GARY ELLISON, Appellees**

**On Appeal from the 44th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-20-01683**

## MEMORANDUM OPINION
Before Justices Whitehill, Osborne, and Carlyle
Opinion by Justice Osborne

In this accelerated interlocutory appeal, Jimmy Roach and Estes Express Lines appeal the trial court's orders denying their motions to transfer venue from Dallas County to Tarrant County. In four issues, Roach and Estes contend the trial court erred by denying the motions. Because appellees presented prima facie proof that venue is maintainable in Dallas County, we affirm the trial court's orders.

## BACKGROUND

Estes is a transportation company. Its corporate headquarters is in Richmond, Virginia. Estes has sixteen shipping terminals in Texas, two of which are located in Dallas County. At all times relevant to this lawsuit, Roach has resided in Tarrant County and has been employed by Estes.

Roach was driving a tractor-trailer in the course and scope of his employment with Estes on January 3, 2019. His trip began at one of Estes's Dallas terminals, although the parties disagree whether Roach's actual "dispatch" for the trip occurred in Dallas or in Richmond. On an icy overpass on Interstate 35 in Murray County, Oklahoma, Roach collided with a Mitsubishi Galant driven by Zacchaeus Hodges in which Erica Womack, Daniel Ellison, Bryce Gusman, and Charles Sulton were passengers. Womack and Ellison died; Guzman and Sulton were injured.

Kimberly Jackson, individually and in her capacity as representative of Womack's estate, sued Roach and Estes in Dallas County for negligence. In her operative petition,[1] Jackson alleged that venue was proper in Dallas County under civil practice and remedies code section 15.002 because "Defendant Estes Express Lines has a principal office in Dallas County" on Singleton Boulevard in Dallas.

---

[1] Jackson filed suit on January 29, 2020, and filed her first amended petition on May 22, 2020. Her second amended petition, filed on June 26, 2020, was not on file at the time of the trial court's hearing and ruling (both on June 24, 2020) on Roach's and Estes's motion to transfer venue addressing Jackson's claims.

Several parties then intervened. Carolyn Johnson-Harris, individually and as representative of Daniel Ellison's estate,[2] Gusman, and Sulton (together, the "Harris Intervenors") filed their petition in intervention on February 13, 2020. Like Jackson, the Harris Intervenors alleged that venue was proper in Dallas County because Estes "has a principal office in Dallas County."

Estes[3] then filed an answer to each petition and motions to transfer venue of Jackson's and the Harris Intervenors' lawsuits. In its motions, Estes alleged that venue was improper in Dallas County and requested transfer to Tarrant County, where Roach resides. Specifically, Estes denied that its principal office was in Dallas County, claiming that it has no "principal office" in Texas because all of the decision makers for the organization are in Richmond, Virginia.

The trial court heard the motions to transfer venue and denied them on June 24, 2020. Estes, however, was not aware of the order until August 4, 2020.[4] In the interim, Gary Ellison[5] intervened in the lawsuit on July 14, 2020, and filed his first amended petition in intervention on August 4, 2020. In his operative petition, Ellison alleged that venue was proper in Dallas County because Estes has a principal office

---

[2] Ellison's estate includes minors D.R.E., M.O., J.O., and K.E.

[3] Roach joined in Estes's motions and responses. We include him in our references to "Estes."

[4] Contending it did not receive timely notice of the trial court's order, Estes filed a motion under civil procedure rule 306a to extend the time for filing its notice of appeal. The trial court granted the motion, ruling that Estes did not receive notice of the June 24, 2020, order until August 4, 2020, thus extending the time period for filing a notice of appeal. *See* TEX. R. CIV. P. 306a(4).

[5] Further references to "Ellison" are to Gary Ellison, not to Daniel Ellison's estate.

–3–

in Dallas County "and because all or a substantial part of the events or omissions giving rise to the claims against Estes Express Line[s] occurred in Dallas County, Texas."

Estes filed a motion to transfer venue of Ellison's claims, again contending that Estes has no principal office in Dallas County or in Texas. In response to Ellison's allegation that a substantial part of the events or omissions giving rise to his claims occurred in Dallas County, Estes argued that "Roach was not qualified or dispatched from Dallas County, nor was he wholly trained and supervised there." Estes also argued that "these allegations only create a mere tangential connection to Dallas County; the statute requires a 'substantial part,'" and added that in any event, "these allegations are inaccurate." The trial court heard Estes's motion on August 14, 2020, and denied it in an order dated the same day. This appeal followed.

## ISSUES

Roach and Estes contend the trial court erred by denying their motions to transfer venue because (1) Estes does not have a principal office in Dallas County, (2) Ellison did not establish that a substantial part of the events or omissions giving rise to his claims arose in Dallas County, (3) appellees who did not establish venue did not show an essential need to have their case tried in Dallas County, and (4) Roach and Estes established proper venue in Tarrant County.

DISCUSSION

**1.      Applicable law and standard of review**

Civil practice and remedies code section 15.002 provides that venue is proper:

(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1)–(4).

Jackson, the Harris Intervenors, and Ellison allege that venue is proper in Dallas County because Estes has a principal office in Dallas County. *See id.* § 15.002(a)(3). "Principal office" is defined as "a principal office of the corporation, unincorporated association, or partnership in this state in which the decision makers for the organization within this state conduct the daily affairs of the organization. The mere presence of an agency or representative does not establish a principal office." *Id.* § 15.001(a). As we explained in *Ford Motor Co. v. Johnson*, 473 S.W.3d 925 (Tex. App.—Dallas 2015, pet. denied):

A corporation may have more than one principal office in this state. [*In re Missouri Pac. R. Co.*, 998 S.W.2d 212, 217 (Tex. 1999)]. However, even though "a principal office" suggests there can be more than one office, the term "principal" indicates some sort of primacy. *Id.* To establish venue based on a principal office, plaintiffs must show the employees in the county where the lawsuit was filed (1) are "decision

makers" for the company, and (2) have "substantially equal responsibility and authority" relative to other company officials within the state. *See id.* at 217, 220. "Decision makers" who conduct the daily affairs are different kinds of officials than agents or representatives, and "daily affairs" does not mean relatively common, low-level management decisions. *Id.* at 217.

*Id.* at 928–29. Estes, on the other hand, maintains there is no Texas county where venue is proper because it has no principal office in this state, and therefore seeks transfer to Tarrant County, where Roach resides.

The parties bear shifting burdens of proof when a defendant challenges venue. Generally, the plaintiff chooses the venue of the case, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue. *Id.* at 928; *Union Pac. R. Co. v. Stouffer*, 420 S.W.3d 233, 239 (Tex. App.—Dallas 2013, pet. dism'd). "Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit." *Ford Motor Co.*, 473 S.W.3d at 928.

A plaintiff satisfies this burden by properly pleading the venue facts and supporting them with an affidavit and "duly proved attachments" that "fully and specifically set[ ] forth the facts supporting such pleading." *Id.* (quoting TEX. R. CIV. P. 87.3(a)). "This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof." *Id.*; *see also Galindo v. Garner*, No. 05-19-00061-CV, 2019 WL 2098689, at *3 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.) ("'if the plaintiff offers prima facie proof through pleadings and affidavits that venue is proper, the inquiry is over'") (quoting *Surgitek, Bristol-Myers Corp. v. Abel*, 997

–6–

S.W.2d 598, 602 (Tex. 1999)). "But, if the plaintiff fails to discharge its burden, the right to choose a proper venue passes to the defendant, who must then prove that venue is proper in the defendant's chosen county." *Ford Motor Co.*, 473 S.W.3d at 928.

When there are multiple plaintiffs (including intervening plaintiffs), each must independently establish proper venue. Civil practice and remedies code section 15.003(a) provides that "[i]n a suit in which there is more than one plaintiff, whether the plaintiffs are included . . . by intervention, . . . or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue." TEX. CIV. PRAC. & REM. CODE § 15.003(a). A trial court's ruling that venue is proper in a particular county for all plaintiffs is "a determination that every plaintiff 'independently establish[ed] proper venue' within the meaning of section 15.003(b)(1)." *Union Pac. R. Co.*, 420 S.W.3d at 237.

In an interlocutory appeal of a trial court's ruling under section 15.003, the appellate court must "determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard." TEX. CIV. PRAC. & REM. CODE § 15.003(c)(1). Accordingly, our review is de novo. *Galindo*, 2019 WL 2098689, at *3. In conducting this review, we must consider the entire record, including any evidence presented at the hearing. *Id.*

## 2. Pleadings and evidence

Because each plaintiff and intervenor "must, independently of every other plaintiff, establish proper venue," TEX. CIV. PRAC. & REM. CODE § 15.003(a), we first consider the pleadings and evidence each plaintiff and intervenor filed for the trial court's consideration at the June 24 and August 14, 2020 hearings. *See* TEX. R. CIV. P. 87.3(b) (trial court shall determine motion to transfer venue "on the basis of the pleadings, any stipulations . . . and such affidavits and attachments as may be filed by the parties").

### a. Plaintiff Jackson

Jackson filed suit on January 29, 2020, alleging that Roach's and Estes's negligence caused the collision and Womack's wrongful death. Jackson also alleged that Estes negligently hired, retained, and trained Roach, negligently entrusted its vehicle to Roach, was "liable under the doctrine of Respondeat Superior," and was grossly negligent.

Estes filed a motion to transfer venue of Jackson's claims on March 9, 2020, and an amended motion on April 29, 2020. Estes attached the April 29, 2020 affidavit of Janice Beacham, Estes's Director of Risk Management, and Roach's April 23, 2020 affidavit stating that on the date of the accident he resided in Tarrant County.

Jackson timely filed a response and a first amended petition on May 22, 2020. In support of her response, Jackson filed excerpts from the deposition of Larry

–8–

Sanderson, who testified as Estes's corporate representative. In reply on June 18, 2020, Estes filed the entire transcript of Sanderson's deposition and a duplicate copy of Roach's April 23, 2020 affidavit. The trial court heard and ruled on this motion on June 24, 2020.

### b.    The Harris Intervenors

The Harris Intervenors—Johnson-Harris, Gusman, and Sulton—filed their original petition in intervention on February 13, 2020. They alleged claims for negligence against Roach, and negligent entrustment, respondeat superior, "negligent hiring, supervision, training, and/or retention" of Roach, and gross negligence against Estes.

Estes's March 9, 2020 motion did not address the Harris Intervenors' claims; instead, Estes filed a separate motion to transfer venue of the Harris Intervenors' claims on April 29, 2020. The motion's substance and attachments, however, were identical to the motion to transfer Jackson's claims filed on the same day. Estes also filed a June 18, 2020 reply, including the deposition and affidavit described above, in support of both of its April 29, 2020 motions.

On the date of the hearing, the Harris Intervenors filed a "Joinder to Plaintiff's Response to Motion to Transfer Venue." In the same pleading, they objected to Estes's reply on the grounds that it was filed too late and included new, untimely arguments. The Harris Intervenors also contended that (1) they were not required to file a response to the motion to transfer, citing rule of civil procedure 86(4), and

(2) their petition established the four elements of proper venue under civil practice and remedies code section 15.003(a). The reporter's record reflects that these matters were brought to the trial court's attention at the June 24, 2020 hearing, and the trial court's June 24 order denying Estes's motion to transfer venue reflects that the court "considered the motion [to transfer venue], and Affidavit presented by Defendants, along with Plaintiff's Answer and evidence provided therewith, the response, the reply and the intervenors' objection and response to Defendants' Reply."

### c.   Intervenor Ellison

Ellison filed his original petition in intervention on July 14, 2020. In it, he alleged that venue was proper in Dallas County because Estes has principal offices there and because "all or a substantial part of the events or omissions giving rise to the claims against Estes" occurred in Dallas County. In addition to facts about the collision, Ellison alleged:

> On Thursday, January 3, 2019, Defendant Estes Express Lines dispatched Defendant Jimmy Roach out of its terminal in Dallas, Texas. Estes Express Lines' Dallas, Texas terminal was Defendant Jimmy Roach's home terminal at the time of the incident in question. Accordingly, not only is Dallas, Texas the origin of the trip taken on January 3, 2018 [sic], but it is the location where the qualification, training and supervision of Mr. Roach occurred as well as where the maintenance of the vehicle he was driving would occur. Additionally, Estes Express Lines' Dallas, Texas terminal is responsible for dispatching and determining the route to be driven and by Mr. Roach on the date in question.

Estes filed a motion to transfer venue of Ellison's claims on July 22, 2020. In support, Estes attached Beacham's April 29, 2020 affidavit, a second affidavit by

Beacham dated July 7, 2020, and Roach's April 23, 2020 affidavit. Ellison filed an amended petition in intervention on August 4 and a response to the motion to transfer venue the following day, relying on and attaching excerpts from Sanderson's deposition. Estes filed its reply on August 10, also relying on and attaching excerpts from Sanderson's deposition. The trial court heard the motion on August 14, 2020. The same day, the trial court signed an order denying Estes's motion to transfer venue of Ellison's claims, citing both grounds alleged by Ellison.

**3.     Proper venue**

Estes maintains it has no "principal office" in Texas, so plaintiffs and intervenors cannot rely on a location of its "principal office" to establish venue. Instead, Estes seeks transfer to Tarrant County, where Roach resides.

Estes argues that all of its "decision makers" are in its corporate headquarters in Virginia. *See* TEX. CIV. PRAC. & REM. CODE § 15.001(a) (defining "principal office" as one "in which the decision makers for the organization within this state" conduct its "daily affairs"). Estes contends that "[e]ven the top Estes employees in Dallas simply lack the authority or discretion to be 'decision makers' and instead perform only routine, lower-level tasks that cannot fairly be categorized as the company's 'daily affairs.'"

In an affidavit supporting Estes's motions to transfer venue, Estes's Director of Risk Management Janice Beacham stated that:

–11–

- Estes's principal place of business and corporate headquarters are in Virginia;

- Estes did not have a principal office in Dallas County, Texas on the date of the accident, and does not have one currently;

- All of Estes's "lead decision makers" are located at the corporate headquarters in Virginia;

- Estes has no corporate decision-making employees in Texas;

- Estes's Texas operations are conducted from sixteen terminals throughout the state, each with "a supervisor, managers, drivers, dockworkers, dispatchers," and some with maintenance employees;

- Terminal employees "handle low-level management decisions, but otherwise report to regional management" in Virginia who have responsibility "for oversight, overall daily direction, and decision making on behalf of the company, and for each of the Texas and other Estes terminals located throughout the nation," and

- "Shop managers" at Estes's terminal location on Singleton Boulevard in Dallas are "low-level management" without "capacity to make decisions for Estes."

In addition to Beacham's affidavit, Estes attached an Estes "Shop Manager" job description to its motions, but did not explain whether a "Shop Manager" was the highest-ranking official at Estes's Dallas terminal or identify any particular Estes employee holding that title.[6]

---

[6] Beacham's second affidavit, filed in support of Estes's motion to transfer venue of Ellison's claims, was directed to Ellison's allegation that a substantial part of the events or omissions giving rise to his claim occurred in Dallas County. Beacham stated that (1) Roach received his dispatch for his route on the date of the accident directly from Richmond, Virginia, not Dallas, (2) Estes's human resources department located in Richmond "handles all the initial intake on potential hires for Estes throughout the entire United States," and the only person in Texas with authority to approve the final hiring decision is Michael Lopez in San Antonio, (3) all employee training material is developed in Richmond, and personnel in Richmond determine the specific training for all Estes employees, and (4) Roach's direct supervisor, Joe Cassis,

In response, all of the plaintiffs and intervenors relied on the deposition testimony of Estes's District Operations Manager Larry Sanderson, whose office is located in Estes's Singleton Boulevard terminal in Dallas County. Estes designated Sanderson as its corporate representative for the deposition. Sanderson testified about Estes's corporate structure. The principal office of the corporation is in Richmond, Virginia. There are six regions within the company. Texas is in the Southwest region. There are two districts within each region, for a total of twelve districts. Texas, Oklahoma, and New Mexico are in the seventh district, and Sanderson is the operations manager for that district. Within each district are the terminals that Beacham described in her affidavit.

Sanderson testified that he is the second-highest-ranking Estes employee in Texas. As District Operations Manager, he "direct[s] terminals within the state[s] of Texas, Oklahoma, and New Mexico," including directing "the managers and activities" within "various terminals in this district." Sanderson testified, however, that he supervises all of the Texas terminal managers "at the direction of" Estes's corporate office in Virginia and in accordance with its "guidelines." He agreed that "day to day," he was "the go-to person in Texas" for the terminal managers "in figuring out daily operational issues." Sanderson supervises Estes's activities in a three-state region including "discussing the number of local drivers that we're using

---

supervised Roach "by and through the direction and instruction he received from employees in Richmond, Virginia."

on a daily basis to pick up and deliver freight" in the region, "controlling cost," and "matching drivers to the workload" in the three states. We conclude that these supervisory activities are different from the "low-level management decisions" Beacham described in her affidavit that are made by each terminal's "shop manager" or supervisor, such as ensuring that payroll for the terminal's employees is correct and on time, maintaining the safety and reliability of equipment, implementing training programs, enforcing compliance with company standards, managing shop operations, and similar responsibilities.

Sanderson testified that R.J. Collins, a regional vice president, also offices at the Singleton Boulevard terminal in Dallas and is the highest-ranking Estes employee in Texas. Sanderson explained that Collins "directs the district operations managers" and makes decisions for Estes on a day-to-day basis according to guidelines "given to him by the corporate office" in Virginia. Collins also coordinates and directs Estes's activities within Texas "[a]t the direction of the corporate office" in Virginia. Sanderson explained that his and Collins's duties are similar: "Meeting—meeting goals. . . . We have goals of efficiency and productivity and things of that sort, matching, you know, people to workload, and those goals are given to us by our corporate office, and it's follow up to those things." But Sanderson conceded that "there's not anyone with more authority or more discretion than you [i.e., Sanderson]" or Collins in Texas to make decisions "as it relates to the management of the terminal managers" in the region.

Horace Boston, a regional human relations manager, offices in Dallas with Sanderson and Collins. Boston is the "highest-ranking Estes HR person within the state of Texas," although he reports to Estes's HR department at its corporate office in Virginia.

Sanderson agreed that all of Estes's Texas terminals "have equal footing as it relates to their terminal." But he acknowledged that the Dallas terminal had the most decision-making personnel—three district or regional managers—of any Texas terminal:

> Q.  Are you aware of any other Texas terminal that has more than three district or regional managers that are making decisions on behalf of Estes in the state of Texas?
>
> A.  No.
>
> Q.  Okay. So as far as high-ranking, or higher-ranking, Estes personnel that are decision-making folks within the state of Texas, Dallas has the most of those?
>
> [objection omitted]
>
> A.  Yes.

Estes emphasizes that no one in the Dallas office has authority to enter into contracts with a third party on Estes's behalf. Estes argues that even if the presence of an agent or representative in Dallas County were sufficient to establish a principal office—a contention expressly rejected in the statutory definition—Estes has no such agent or representative in Dallas. *See* TEX. CIV. PRAC. & REM. CODE § 15.001(a) ("The mere presence of an agency or representative does not establish a principal office."). To support its argument, Estes relies in part on cases interpreting

now-repealed section 15.037 of the civil practice and remedies code,[7] which permitted plaintiffs to sue an out-of-state corporation doing business "in any county in which the company may have an agency or representative." *See Ford Motor Co. v. Miles*, 967 S.W.2d 377, 380–81 (Tex. 1998) (discussing former § 15.037); *cf.* TEX. CIV. PRAC. & REM. CODE § 15.001(a).

The current statutory language, however, was discussed and interpreted by the supreme court in *In re Missouri Pacific Railroad Co.* and by this Court in *Ford Motor Co.* and *Union Pacific Railroad Co.*, and these authorities control our analysis. *In re Missouri Pacific R.R. Co.* establishes two pivotal prongs in the principal office venue analysis:

One, a principal office must have a sufficiently high level employee running the entity's daily business. That person need not be a C-suite person but must be higher than a low-level manager who makes only routine, non-policy decisions. *In re Missouri Pac. R.R. Co.*, 998 S.W.2d at 217, 220–21. For example, a local foreman is not sufficient. *Id.* at 217 (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 759 (Tex. 1993)). Further, that person must have more authority than the ill-defined "broad power and discretion to act for the corporation" that agents and representatives

---

[7] Act of June 3, 1987, 70th Leg., 1st C.S., ch. 4, § 1, 1987 TEX. GEN. LAWS 52, 53, formerly codified at TEX. CIV. PRAC. & REM. CODE § 15.037, *repealed by* Act of May 8, 1995, 74th Leg. R.S., ch. 138, § 10, 1995 TEX. GEN. LAWS 978, 981.

possess. *See id.* Yet, a regional manager who coordinates operational activities, like those involved in this case, is sufficient for this prong. *See id.* at 221.

Two, a principal office cannot be clearly subordinate to and controlled by another Texas office. *Id.*

All a plaintiff must show to maintain venue is a prima facie case on both prongs. *See id.* at 216.

> This passage from *Mo. Pac.* controls this case:
>
> The only official the plaintiffs claim is a "decision maker" in Tarrant County is a division superintendent for the Fort Worth service unit. He testified in his deposition that his duties included coordinating the movement of trains, staffing the crews within the area, and ensuring rules compliance and discipline. The division superintendent also said that the southern region is based in Houston, and his boss is the general manager in Harris County.
>
> This evidence is sufficient to characterize a division superintendent as a decision maker under the statute. However, it fails to establish prima facie that the Tarrant County office is a principal office when compared to the responsibility and authority exercised by company officials elsewhere in Texas.

*Id.* at 221.

Here, plaintiffs' evidence meets both prongs:

First, Sanderson and Collins are higher level functionaries that perform duties that *Mo. Pac.* held were sufficient for decision maker status. Thus, we needn't address appellants' argument that a corporation might have offices in Texas and yet no principal office for venue purposes.

–17–

Second, plaintiffs' evidence shows that no other Texas office has higher level management authority than or control over the Dallas office.

Accordingly, for venue purposes Estes has a principal office in Dallas County, and the trial court correctly denied appellants' venue transfer motions.

Given our conclusion that appellees established proper venue under civil practice and remedies code section 15.002(a)(3), we need not consider appellants' remaining issues asserting that venue was not proper under sections 15.002(a)(1) or 15.003(a)(3), or that venue should be transferred to Tarrant County, where Roach resides.

## CONCLUSION

We affirm the trial court's orders denying Estes's and Roach's motions to transfer venue.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

200762F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

JIMMY ROACH AND ESTES
EXPRESS LINES, Appellants

No. 05-20-00762-CV      V.

KIMBERLY JACKSON,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF ERICA WOMACK,
CAROLYN JOHNSON-HARRIS,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF DANIEL ELLISON
AND MINORS D.R.E., M.O., J.O.,
AND K.E., BRYCE GUSMAN,
CHARLES SULTON AND GARY
ELLISON, Appellees

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-01683.
Opinion delivered by Justice
Osborne. Justices Whitehill and
Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's orders denying the motions to transfer venue of appellants Jimmy Roach and Estes Express Lines are **AFFIRMED**.

It is **ORDERED** that appellees Kimberly Jackson, Individually and as Representative of the Estate of Erica Womack, Carolyn Johnson-Harris, Individually and as Representative of the Estate of Daniel Ellison and Minors D.R.E., M.O., J.O.,

–19–

and K.E., Bryce Gusman, Charles Sulton and Gary Ellison recover their costs of this appeal from appellants Jimmy Roach and Estes Express Lines.

Judgment entered December 10, 2020